THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ISAAC ASTERI, Defendant-Appellant.

First District (1st Division) No. 1—86—3596

Opinion filed April 9, 1990.

886

Michael J. Pelletier and Martin Carlson, both of State Appellate Defender's Office, and Northwestern University Legal Clinic, both of Chicago (Leslie Ann Jones, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund and Paul Gliatta, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

Defendant Isaac Asteri was charged and convicted of the murder (Ill. Rev. Stat. 1983, ch. 38, par. 9—1—(a)(1)) of George Martinez and sentenced to 30 years' imprisonment: He appeals.

Isaac Asteri, George Martinez and Larry Bell lived in separate apartments at 5433 North Kenmore in Chicago. Asteri and Martinez had been friends since they were boys. Asteri, Martinez, and Oscar Monterroso were business associates in an illegal narcotics selling venture.

On October 8, 1985, Asteri had already been at Martinez' apartment when Monterroso arrived around 5:30 p.m. Later, about 10 p.m., Martinez arrived. Sometime after 10 p.m., Martinez left and said he would be back soon. At approximately 10:40 p.m., Asteri left the apartment. Later that night, Bell opened his apartment door when he heard a fight in the hallway and "no, no" in Spanish. When he opened his door, he saw Asteri's left arm around Martinez' neck and saw Asteri push Martinez down the stairs. Because Bell was scared he closed his door, but he continued to hear a scuffle and then gunshots. Bell sat for 20 or 25 minutes and did not call the police.

Around 10:45 p.m., Asteri returned to Martinez' apartment and told Monterosso to call the police because Martinez had been shot. Then, they went downstairs to meet the police. Detective Villardita arrived between 11 and 11:15 p.m. at the apartment building and saw Martinez standing hunched over against the wall. Martinez later died of multiple gunshot wounds. The detective had observed Martinez' dentures in the hallway and asked Asteri and Monterroso if they recognized the dentures. Asteri had told Monterroso in Spanish to keep quiet.

Later, Asteri told Detective Villardita that from Martinez' apartment window he saw someone run from the scene, and Asteri gave a description of the suspect. At this point, the police asked Asteri and Monterroso if they were willing to go to the police station to look at

photos and to give a more detailed account of what happened. Asteri agreed. While Asteri and Monterroso waited for transportation to the police station, the police saw and interviewed Bell. Bell denied any knowledge of the incident. About midnight Asteri, Monterroso, and Bell were driven without handcuffs to the police station. At about 3:30 to 4 a.m. October 9, Detective Villardita arrived at the police station, where he saw Asteri, Monterroso, and Bell sitting on a bench without handcuffs. After the three men were all interviewed, Asteri and Bell looked through photo albums.

Early in the morning of October 9, Asteri, Monterroso, and Bell were asked to take gun powder residue and lie detector tests. At 9 a.m. Asteri had the gun powder residue test but not the lie detector test. Also at 9 a.m., a new shift of detectives was advised to assist Asteri in locating the suspect, and Asteri spent the day at the police station. However, sometime after 9 a.m., Bell and Monterroso left the police station. By 4:30 p.m., a handgun with three spent shells had been found near the murder scene.

At approximately 7 p.m. on October 9, Bell spoke with Detective Villardita and said that he was extremely scared. Bell had lied to the police when he said he did not see anything the night Martinez was killed because Asteri threatened to kill him. Then, Bell told Detective Villardita what he saw. After hearing Bell's story, the police confronted Asteri, but he denied the accusations. Around 7 p.m., Asteri was placed in an interview room with a sergeant outside the room. Detective Villardita informed the sergeant that Asteri was now a suspect and not free to leave. Detective Villardita did not call a prosecutor or take Asteri to a courtroom because he was still gathering evidence. Around 8 p.m., Asteri was handcuffed. Sometime between midnight on October 10 and 4:30 p.m., Asteri was placed in a lineup. During that time, Asteri was taken to a second police station at 11th and State for investigation concerning Martinez' death.

On October 10, around 6 p.m., Asteri was interrogated, and at 10 p.m. he gave a statement. Asteri stated that he and Martinez had fought in the hallway and Martinez pulled a gun. Asteri got nervous, grabbed the gun, and hit Martinez in the face, causing his dentures to fall out. Martinez ran down the hall. Asteri chased him and fired two shots at him. Asteri threw the gun in the back of a pickup truck and ran to the apartment.

Before the trial began, Asteri moved to quash his arrest and suppress his statement to the police, but the motion was denied. At trial, Asteri's attorney asked a prospective juror, Ms. Schneiderbaur, if she would favor one side more than the other. After hearing her respond

perhaps, defense counsel moved to have Ms. Schneiderbaur removed for cause. The trial court denied the motion. The attorney, however, did not use a peremptory challenge and ultimately used only five peremptory challenges. During closing arguments, the prosecution argued that Bell was afraid and had not wanted to cooperate since "the defendant has friends, the defendant has fellow drug members that he—." Defense counsel's objection was sustained. The prosecution then argued that "the defendant has other associates out on the street. They're still out there. He [Bell] doesn't want to have anything to do with that. He wasn't going to tell the police at first."

The jury returned a verdict of guilty, and the trial court, as stated, sentenced Asteri to 30 years' imprisonment.

■ Initially, Asteri argues that he was seized before 7 p.m., contending that the trial court applied the wrong legal standard in determining when he was seized. The record, however, shows that the trial court correctly considered all of the circumstances surrounding the incident in determining whether a reasonable man, innocent of any crime, would have considered himself under arrest. (*People v. Hardy* (1986), 142 Ill. App. 3d 108, 117.) Asteri contends that he was under arrest before 7 p.m. on October 9 by citing numerous cases as authority; however, those cases are all distinguishable based on a totality of the circumstances since those defendants were all "picked up" or "brought in" without probable cause as suspects for questioning rather than as witnesses to a crime. (*Florida v. Royer* (1983), 460 U.S. 491, 75 L. Ed. 2d 229, 103 S. Ct. 1319; *Dunaway v. New York* (1979), 442 U.S. 200, 60 L. Ed. 2d 824, 99 S. Ct. 2248; *People v. McGhee* (1987), 154 Ill. App. 3d 232; *People v. Ealy* (1986), 146 Ill. App. 3d 557; *People v. Travis* (1984), 122 Ill. App. 3d 671; *People v. Fitzpatrick* (1982), 107 Ill. App. 3d 876.) Here, the trial court correctly determined that Asteri was not seized before 7 p.m. since Asteri voluntarily went to the police station as a witness, not a suspect, answered questions as a result of allegedly witnessing the assailant flee the scene, looked through photo albums trying to identify the assailant, was not given *Miranda* warnings, never asked if he could leave, never tried to leave, and was never told nor indicated that he was not free to leave before 7 p.m. Therefore, no custodial interrogation took place.

■ ■ Next Asteri contends that the police lacked probable cause when Asteri was arrested at 7 p.m. But the totality of circumstances shows that the police officers had probable cause to arrest Asteri at 7 p.m. on October 9 because they knew that Martinez was found murdered in the building that Asteri lived in, that a gun was found within

a block and a half of the murder scene, and that Bell saw Asteri and Martinez fighting. Asteri contends that Bell was an informant and that his accusations lacked reliability; but, persons who supply information after being interviewed by police officers, or who give information as witnesses during the course of an investigation, are not "informers." (*People v. Jones* (1983), 119 Ill. App. 3d 615, 623, citing *United States v. LaFond* (E.D.Wis. 1980), 482 F. Supp. 1379, 1384.) Bell cannot be characterized as an informant simply because he supplied information as a witness and after a police interview.

■■ Then, Asteri argues that his confession should have been suppressed since his detention from October 9 at 7 p.m. until the next day violated his constitutional and statutory rights of prompt presentment to a judicial officer for a probable cause determination for detainment. (*Gerstein v. Pugh* (1975), 420 U.S. 103, 43 L. Ed. 2d 54, 95 S. Ct. 854; Ill. Rev. Stat. 1983, ch. 38, par. 109—1.) We disagree because the length of the detention is only one factor to be considered when determining whether the confession was voluntary, rather than as grounds to suppress a voluntary confession. (*People v. Goree* (1983), 115 Ill. App. 3d 157.) Asteri, also, misquotes the trial court as stating that the delay in presentment was excused because the custody occurred over the weekend. In fact, the trial court applied the correct standard and was merely reciting the facts in *People v. Taylor* (1968), 40 Ill. 2d 569.

■■ ■ Next, Asteri argues that he was denied a fair trial when the court did not excuse Ms. Schneiderbaur for cause and that he was denied effective assistance of counsel because defense counsel did not use a peremptory challenge to excuse her. The record, however, shows that the trial court was acting within its discretion by keeping Ms. Schneiderbaur on the panel because *voir dire* was extensive enough to expose any potential bias. Further, Asteri was not denied effective assistance of counsel by his attorney's failure to exercise a peremptory challenge against Ms. Schneiderbaur because defense counsel appropriately argued and objected to her presence. Accordingly, defense counsel's failure to use a peremptory challenge is characterized as a strategic decision which this court will not reverse. (*Strickland v. Washington* (1984), 466 U.S. 668, 680-91, 80 L. Ed. 2d 674, 688-96, 104 S. Ct. 2052, 2060-66.) Moreover, there is no indication that, absent the claimed error, the fact finder would have had a reasonable doubt respecting Asteri's guilt. The trial court properly denied removing Ms. Schneiderbaur for cause, and Asteri was neither denied effective assistance of counsel nor prejudiced by counsel's decisions.

█ Lastly, Asteri argues that the prosecution's closing argument was so inflammatory as to deny him a fair trial. We disagree. Although the issue was not waived, because the defense attorney did object to the prosecutor's comment during trial as well as in his post-trial motion, the prosecutor's argument was not improper because it was based on the evidence. (*People v. Weatherspoon* (1978), 63 Ill. App. 3d 315.) Bell testified that he knew defendant (Asteri) and the victim (Martinez) as the "coke dealers from upstairs"; that Asteri threatened to kill Bell if he said anything; and that Bell asked the police for protection. Moreover, defense counsel's argument had invited rebuttal because he asked the jury to consider why Bell waited to tell the police what he saw. Asteri was not denied a fair trial.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL and MANNING, JJ., concur.