THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL McCOY, Defendant-Appellant.

First District (2nd Division)   No. 1—89—3238

Opinion filed November 4, 1992.—Rehearing denied January 22, 1993.

Randolph N. Stone, Public Defender, of Chicago (R.H.R. Silvertrust, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Janet Mahoney, and Leslie Quade, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

A jury found defendant, Michael McCoy, guilty of murder (Ill. Rev. Stat. 1985, ch. 38, par. 9—1) and armed robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—2). The circuit court sentenced him to life imprisonment without parole for murder and 30 years for armed robbery, to be served concurrently. He appeals, questioning whether (1) the court erred in denying his motion to quash arrest and suppress certain evidence; (2) he was deprived of his right to confront witnesses; (3) the State improperly introduced evidence of a codefendant's other crimes; and (4) the prosecutor's closing remarks were highly inflammatory and prejudicial.

Prior to trial, defendant moved to quash his arrest and suppress evidence. At the hearing on his motion, Chicago police officer Michael Ballard testified that he was assigned to investigate the 1 a.m., April 10, 1986, homicide of the victim, Nazih Youssef. From a police report, Officer Ballard determined that there were three male perpetrators. The first, who was identified as the shooter, was described as a black male; was between 25 and 35 years of age; weighed 160 to 190 pounds; was 5 feet 6 inches to 5 feet 8 inches tall; was dark-complected; had a moustache; wore a large earring in his left ear; wore a sports cap; wore a black leather jacket; and wore dark gym shoes.

On April 12, 1986, Officer Ballard questioned people in the homicide neighborhood. One such person, known only as John, told him that defendant and another individual were involved in the homicide. John had not previously given the officer information which led to a felony arrest. Ballard did not know where John lived, but had spoken to him before. John mentioned that defendant always wore a large gold snake earring in his left ear. John's description of defendant's height, weight and complexion matched that of the shooter set out in the police report.

Later that afternoon, Officer Ballard and his partner received a radio call and proceeded to 3618 South State Street, where defendant was seated in a green automobile directly across the street from where the homicide took place. Defendant was asked to get out of his car. He was wearing a black baseball cap, a black leather jacket and a jogging outfit. There was a gold earring in his left ear. Defendant was 24 years old, 5 feet 9 inches tall, and weighed 170 pounds. Based upon John's information and the description from the police report, defendant was placed under arrest. A picture of defendant taken two days after the crime occurred showed that he had a goatee, which was not mentioned in the report referenced by Officer Ballard. Also, defendant's hairstyle was different prior to his arrest.

Following argument, the court denied defendant's motion and the case proceeded to trial.

Abd Ahmad, the victim's father, testified that on April 10, 1986, in the early morning hours, Youssef's wife called, informing him that the victim had been shot. Abd identified Youssef at the county morgue.

Hussein Awwad testified that he worked as a cashier in the store owned by the victim. Prior to the incident, Awwad observed a new employee, Wayne Millighan,[1] not working, but watching where the cash was kept. Millighan worked only one night. After being informed of Millighan's activity, the victim first paid him and then fired him.

On April 9, 1986, at approximately 11 p.m. or 11:30 p.m., Awwad observed Millighan and another person enter the store, buy some liquor, drink inside the store and bother the customers. At about 1 a.m., on April 10, 1986, Awwad was in the stockroom and Mohammed Ghrayyib, another witness, was working in the grocery section near a cash register, making coffee. The victim was in the liquor section at the back of the store, and another employee, Achmaad Hassan, was in the beer walk-in cooler. Awwad heard a "great" noise at a locked door that separated the counter from the lobby area. He proceeded to the front of the store, saw Millighan holding a small silver automatic, and heard him announce a stick-up. Millighan had entered the restricted area through the door leading from the customer area and was standing next to the cash register.

After Millighan ordered Ghrayyib to open the cash register, Millighan grabbed the entire tray from the cash register and started taking money. Awwad heard a shot, which came from the liquor section

---

[1]Wayne Millighan was tried separately and is not involved in this appeal.

of the store. Millighan said "come on, let's go, we are done." Millighan exited; another offender, who was in the entrance, walked out second; and the alleged shooter fled last from the liquor section, holding a dark, long-barrelled revolver and a bag of the type used to hold money. Awwad had seen the shooter before. He was walking fast and passed within four or five feet of the witness.

Awwad found the blood-covered victim lying on the floor in a small office where money was kept. Awwad called the police. He described the man who came from the shooting as having an earring, a mustache, a small beard and wearing blue jeans. The offender was about 5 feet 9 inches tall with a dark complexion. On April 12, 1986, Awwad identified defendant at a lineup as the person who left with the black revolver, coming from the area where the shot was heard. He also identified defendant in court as that man. On July 24, 1986, he identified Millighan in a lineup.

Loretta Jackson testified that on April 10, 1986, at about 1 a.m., she was leaving her friend Cecelia Hale's Chicago Housing Authority (CHA) apartment located across the street from the incident, with her fiancee, Donel Collins. Millighan approached them and shot Collins following an argument. He used a small- to medium-sized silver automatic handgun.

Jackson's brother took Collins from Hale's apartment to the hospital. Subsequently, they spoke to the police at the hospital, and Jackson picked Millighan out of a photograph display about one week later. She asserted that Millighan's nickname was "Insane Wayne."

On cross-examination she testified that Millighan had facial hair and Jheri curl styled hair.

Hale testified that as Collins was being driven to the hospital, she remained in her apartment. From her window she observed Millighan with two other males across the street enter Youssef's food and liquor store. Twenty minutes later, she went back to the window and saw police cars in front of the store.

Defendant moved to strike the testimony of Jackson and Hale. The court denied the motion, but agreed to admonish the jury that the testimony of another crime is not to be considered as a crime committed by defendant.

Ghrayyib, in addition to substantially corroborating Awwad's testimony, asserted that he identified defendant from a photograph array and from a lineup as the man who, carrying a black .38-caliber revolver and a money bag, came from the immediate area in which the victim was shot. He also identified defendant in court. Ghrayyib subsequently identified Millighan in a lineup.

Achmaad Hassan, who was in the cooler area during the incident until hearing a shot, verified that Millighan worked at the store, as well as the events which took place prior to the incident. He identified Millighan from a photograph display and identified defendant as one of the people drinking inside the store prior to the homicide. He also identified defendant in court and Millighan at a lineup.

Chicago police detective Leo Wilkosz testified that on April 10, 1986, at about 1:40 a.m., he was assigned to investigate a homicide-robbery at 3615 South State Street. He arrived with other detectives and entered the food and liquor store at that address. Initially, he discovered a shoe print on galvanized sheet metal covering a door. He found the victim dead, lying on the floor, atop a cash register drawer, covered with blood. The victim was shot in the left side of the head.

Detective Wilkosz learned that at approximately the same time as the occurrence at this address, there was another shooting across the street in a CHA building. After further investigation, he spoke to three witnesses. Only two described the incident because one witness did not view the people in the store. Based upon these descriptions and a report, Wilkosz compiled a description of the shooter, namely, that he was a dark-complected black male, 25 to 30 years old, 5 feet 6 to 5 feet 8 inches tall, weighing 160 to 190 pounds, and had a mustache. The offender was wearing a black sports cap, a black waist-length leather jacket, and blue jeans. He wore a gold earring in his left ear and carried a dark, long-barrelled handgun.

The witnesses also described another man, who stayed in the grocery area toward the front of the store with one of the witnesses. This person removed cash and food stamps from the cash register. He was carrying a small, silver automatic pistol, similar to the weapon purportedly used in the shooting at the CHA building. One of the witnesses informed Detective Wilkosz that the shooter kicked a door in. His report did not note any offender having had a goatee.

Chicago police officer Robert Smith, testifying as an expert in firearms identification, described the bullet that killed the victim as .38-caliber, shot from a revolver.

Officer Rick Roberts of the Chicago police department testified as an expert in forensic serology. He received defendant's gym shoes and a vial of the victim's blood. He was able to determine that there was blood on the shoes; however, the amount of the sample was insufficient for further testing.

Yuksel Konakci, M.D., an assistant medical examiner and expert in autopsies, testified that the cause of death was a close-range gunshot to the left side of the victim's head.

Officer Ballard's trial testimony tracked that which he gave at the pretrial hearing. He identified defendant in court and defendant's earring. At the time of arrest he noticed a tattoo on defendant's arm. Defendant stipulated that the word "Iceberg" was tattooed on his left arm.

Chicago police detective James O'Connell testified that he investigated the shooting and homicide of Collins. He corroborated the testimony regarding the prior photograph identification of defendant and Millighan. He identified defendant in court and verified the lineup identification of defendant and Millighan. He also inventoried defendant's gym shoes and earring.

The State rested. The defense called four witnesses.

Chicago police officer Anthony Mickel asserted that the description of the offenders sent in a flash message over the police radio did not note that defendant had facial hair. Officer Thaddeus J. Melko, a Chicago police evidence technician, found no suitable fingerprints in the room where the victim was shot. He removed metal from a door with a shoe print created when one of the offenders allegedly kicked the door open. Chicago police officer William E. Sherlock, a crime laboratory examiner, asserted that the shoe print left on the door did not match the shoes defendant was wearing when arrested.

Beverly Keziah Barney, who knew defendant, identified him in court. She saw someone running with a tray of money near the store on April 10, 1986, at approximately 1 a.m. She was across the street. Seven or eight men were present, but defendant was not one of them. The men ran past her.

Defendant rested. He was thereafter found guilty and sentenced as first noted.

# I

Defendant asserts that his arrest was without probable cause because it was based entirely on the information of an anonymous informer who was not an eyewitness and from whom the police never previously received information; therefore, his motion to quash arrest and suppress the evidence should have been granted.

The record shows that after reading a description of the three offenders, Officer Ballard interviewed neighborhood people near the shooting. John, a person the officer had seen in the neighborhood previously, told him he heard that two people, "Iceberg" and "Insane Wayne," were involved in the shooting. John told the officer that defendant's nickname was "Iceberg," and described defendant's height and weight, that he wore an earring and of defendant's dark

complexion. John's description of defendant approximated that of the shooter set forth in the police report that Ballard read.

Later that day, after receiving a radio call informing him defendant was sitting in a green automobile at 3618 South State Street, Officer Ballard went to that location, where he found defendant. He was wearing a sports cap, a black leather jacket and a gold earring in his left ear. Defendant weighed 170 pounds, measured 5 feet 9 inches tall and was 24 years old. His appearance matched John's description and that found in the police report.

Defendant maintains that because Officer Ballard did not know where John lived; there were no other occasions where John gave information leading to a felony arrest; John did not see the offense; and defendant was not engaged in unusual activity at the time of arrest, the police information was uncorroborated, unreliable and his arrest was not based on probable cause.

■ It is not entirely clear that John was an informant as that term is commonly understood in criminal cases. Those who supply information after being interviewed by a police officer or who give information as witnesses during the course of an investigation are not "informers." (*People v. Asteri* (1990), 196 Ill. App. 3d 885, 890, 554 N.E.2d 1059; *People v. Jones* (1983), 119 Ill. App. 3d 615, 623, 456 N.E.2d 926, *appeal denied* (1984), 99 Ill. 2d 532.) Here, John may not have been an "informer" because, from all that appears, he gave information as a citizen pursuant to an investigation.

In any event, the circuit court's determination that probable cause existed will not be disturbed unless manifestly erroneous. (*People v. Evans* (1988), 125 Ill. 2d 50, 71, 530 N.E.2d 1360.) Probable cause is found when the police possess enough evidence to lead a reasonable person to believe that a crime has been committed and that it was committed by defendant. (*People v. McCleary* (1990), 208 Ill. App. 3d 466, 477-78, 567 N.E.2d 434.) The totality of the facts and circumstances known to the police officer must be considered. (*McCleary*, 208 Ill. App. 3d at 478.) A general description of an offender is sufficient to establish probable cause when supported by other relevant facts known to the arresting officer. (*People v. Lippert* (1982), 89 Ill. 2d 171, 180-81, 432 N.E.2d 605.) From the facts noted in the opening paragraphs of this point, the circuit court's finding of probable cause to arrest defendant for the offenses charged is sufficiently supported and by no means was manifestly erroneous.

Additionally, the State correctly maintains that if John were considered to be an informant, his information was reliable due to corroboration. Corroboration of an informant's tip lends reliability to the al-

ert because it reduces the risk that it stems from an inaccurate rumor or a fabricated story. (*People v. Tisler* (1984), 103 Ill. 2d 226, 469 N.E.2d 147.) Here, John's description of defendant was corroborated by the description of defendant in the police report and defendant's appearance at arrest.

Defendant's arrest was based upon probable cause and was legal.

## II

Defendant insists he was deprived of his constitutional right to confront witnesses, where the police were allowed to testify that an anonymous informer told them defendant was involved in the murder of the victim.

Prior to trial, defendant made a motion *in limine* to prevent Officer Ballard from testifying that John told him defendant was the person for whom police were looking. The circuit court ruled the officer could testify that he made an investigation and talked to people and, as a result, he was seeking defendant. The court ruled further that it would not let the officer testify as to descriptions.

During cross-examination, Officer Ballard denied having included the names of any of the people he interviewed or the places he went to interview the people in his report. During redirect examination, the State asked Ballard to read from his police report. It was intended that Ballard read a marked portion of the report which recorded "has spoken to a citizen who stated he did not want to become involved." Ballard, however, went beyond the marked portion and read, "but said Michael Iceberg McCoy and Insane Wayne were the people the police were looking for." The circuit court denied defendant's motion for a mistrial and instructed the jury that the added testimony was stricken. The court was unsure that the jury heard the stricken words.

Defendant made a second motion for mistrial which was denied. The court reasoned that the statement was not prejudicial because testimony was previously introduced that police were looking for Iceberg and Insane Wayne. During closing argument, the prosecutor remarked to the jury that the officer was looking for "Michael Iceberg McCoy" due to his investigation. Defendant avers the use of the disputed statement constitutes hearsay, which violates defendant's constitutional right to confront witnesses.

A police officer's testimony recounting steps taken in the course of an investigation may be admissible without violating defendant's confrontation rights, although the officer's description of the progress of the case might suggest that nontestifying witnesses impli-

cated defendant. (*People v. Johnson* (1987), 116 Ill. 2d 13, 24, 506 N.E.2d 563.) The testimony, however, should not set forth the substance of the conversation, which would be inadmissible hearsay. (*Johnson*, 116 Ill. 2d at 26-28.) The State maintains the contents of the conversation did not go to the truth of the matter asserted, but to the officer's course of conduct. Because defendant told Officer Ballard his nickname was Iceberg, the State avers, John's implication of "Michael Iceberg McCoy" was demonstrative of Officer Ballard's course of conduct. John's statement, it is asserted, showed why the officer arrested defendant.

Defendant persuasively maintains that he was directly implicated by the statement, in violation of his right to confrontation. (*Johnson*, 116 Ill. 2d at 24.) Confrontation errors, although constitutional violations, do not automatically warrant reversal, however. Defendant's conviction may be affirmed where the error was harmless beyond a reasonable doubt. (*Johnson*, 116 Ill. 2d at 28.) Admission of hearsay evidence is harmless error if there is no reasonable possibility the verdict would have been different had the hearsay been excluded. *People v. Bodoh* (1990), 200 Ill. App. 3d 415, 431-32, 558 N.E.2d 178.

■ Defendant in this case was seen in the store by two eyewitnesses at 1 a.m. Defendant went past the two witnesses on his way out of the store. Three witnesses recognized him as having been there at 11 p.m. that evening, where he remained and drank gin. Further, two of the witnesses identified defendant in a lineup as the person they had seen leaving the area where the victim had been shot and killed. The other witness identified defendant as the person in the store with Millighan at 11 p.m. The court observed that the jury may not have heard the disputed testimony. Furthermore, as the circuit court stated, defendant's nickname was previously revealed in testimony as was the fact that police were looking for him.

It is within the discretion of the circuit court to determine the propriety of declaring a mistrial, which will not be disturbed absent an abuse of discretion. (*People v. Redd* (1990), 135 Ill. 2d 252, 323, 553 N.E.2d 316.) The court in the present case did not abuse its discretion, because the error was harmless under all circumstances.

### III

Defendant identifies prejudicial error in the State's having introduced evidence of a crime committed by a codefendant, where defendant was not himself implicated.

Prior to trial, defendant moved *in limine* to preclude as prejudicial Jackson's and Hale's testimony, which related the shooting of Collins across the street from the robbery-murder because defendant was not involved in the shooting of Collins and because it was evidence of another crime committed by a codefendant. The State maintained the testimony of Jackson and Hale corroborated the eyewitnesses' testimony that Millighan was at the scene of the murder; therefore, because the eyewitnesses properly identified Millighan, it was more probable that the eyewitnesses properly identified defendant, making the disputed testimony relevant. The court denied the motion *in limine* based upon this identification factor.

Defendant avers it was not necessary to introduce testimony about the shooting of Collins in order to place Millighan at the scene with a silver gun. Jackson merely could have testified, it is asserted, that she had an argument with Millighan and had seen him brandish a gun. Likewise, Hale merely could have stated she looked out of her window and saw Millighan heading toward the liquor store. Defendant asserts, therefore, testimony regarding the shooting of Collins was unnecessary and highly prejudicial. Defendant adds that the testimony was irrelevant because there was evidence that Millighan had worked at the store previously and was known by the witnesses. Further, defendant avers possession of the silver gun was irrelevant because Millighan could have given it to anyone subsequent to shooting Collins and prior to entering the store.

In further support of the relevance of Jackson's and Hale's testimony, the State points to Jackson's assertion that other men were present with Millighan when he shot Collins. Hale averred that Millighan was with two other men when she observed him walk into the liquor store, and the shootings happened within minutes of each other. Based upon these facts, the State additionally claims the testimony corroborates the eyewitnesses' identification of Millighan, which in turn corroborates the eyewitnesses' identification of defendant, because the events happened shortly after one another at about the same location. The State adds that because Jackson and one of the witnesses testified that Millighan had a small silver handgun, it was more probable than not that defendant shot the victim because the victim was killed with a .38-caliber revolver and not by a small handgun.

■ It is the function of the circuit court to weigh the probative value and prejudicial effect of evidence. Relevant evidence is that having any tendency to make the existence of a fact that is of con-

sequence to the determination of the action more or less probable than it would be without the evidence. (*People v. Gonzalez* (1991), 142 Ill. 2d 481, 487-88, 568 N.E.2d 864.) The court's decision will not be overturned on appeal absent a clear abuse of discretion. (*Gonzalez*, 142 Ill. 2d at 489.) When the court denied the motion *in limine* here, it found the testimony to be relevant to identification notwithstanding the alleged prejudicial effect. The court's decision was not a clear abuse of discretion. *Gonzalez*, 142 Ill. 2d at 489.

Furthermore, as the State asserts, the prohibition against evidence of other crimes has limited application here because the evidence was not of defendant's other crimes, but of Millighan's other crime. In any event, the testimony was relevant to show identity. *People v. Hayes* (1990), 139 Ill. 2d 89, 145, 564 N.E.2d 803.

If error was committed, it was harmless in light of the considerable evidence implicating defendant. *People v. Lindgren* (1980), 79 Ill. 2d 129, 141, 402 N.E.2d 238.

## IV

Lastly, defendant urges the State's conduct of drawing the jury's attention to blood on defendant's shoes and implying that it was that of the victim was highly inflammatory and prejudicial, especially where there was no evidence that the blood was in fact that of the deceased.

In closing argument, the prosecutor remarked to the jury that the victim's blood was on defendant's shoes, which defendant took steps to remove thereby explaining why so little blood was found on the shoes. Defendant contends that there was no evidence to support these remarks, pointing to the laboratory technician's assertion that while the shoes had blood on them, he could not determine whether the blood was the victim's or was even human. Defendant argues that the State's remarks were made to inflame the jury and were not based on the evidence. The State avers that (1) the remarks were properly based on legitimate inferences drawn from the evidence; (2) any error was cured by the jury instructions given; and (3) even if the comments were improper and not cured, any error was harmless and not a ground for reversal.

A prosecutor is allowed considerable latitude in making closing arguments. (*People v. Moman* (1990), 201 Ill. App. 3d 293, 315, 558 N.E.2d 1231.) Because the circuit court is generally in a better position than a court of review to determine the prejudicial effect, if any, of comments made during closing argument, its ruling will be upheld absent a clear abuse of discretion. (*People v. Gonza-*

*lez* (1991), 142 Ill. 2d 481, 494, 568 N.E.2d 864.) Closing argument properly can be based upon logical inferences drawn from the evidence. (*People v. Collins* (1985), 106 Ill. 2d 237, 277, 478 N.E.2d 267.) As the State maintains, the disputed remarks here were logical inferences drawn from the evidence that there was blood on the floor and walls where the victim was shot. Further, it should be noted that the prosecutor also mentioned the inconclusive results of the blood tests.

Nevertheless, any error was cured by the jury instructions given here. (*People v. Stiff* (1989), 185 Ill. App. 3d 751, 757, 542 N.E.2d 392.) A jury is presumed to abide by a court's instruction that closing argument is not evidence and will disregard testimony not admitted into evidence, thereby curing any harm incurred. (*People v. Lasley* (1987), 158 Ill. App. 3d 614, 626, 511 N.E.2d 661; *People v. Bracy* (1986), 152 Ill. App. 3d 566, 576, 504 N.E.2d 764.) The court here stated, in response to defense counsel's objections to the remarks, that the jury heard the evidence and could draw inferences therefrom. Additional instructions given told the jury that closing argument was not evidence; argument not based on evidence should be disregarded; it was the jury's duty to determine the facts in the case from the evidence presented; they should disregard testimony which the court had refused or had stricken; they should only consider testimony of witnesses and exhibits which the court received; defendant was presumed innocent; the State must prove defendant guilty beyond a reasonable doubt; and defendant was not required to prove his innocence. Based upon these instructions, any error was cured.

For the reasons set forth above, we find no bases upon which to disturb the jury's verdict in this case. Accordingly, the judgment of the circuit court must be affirmed.

Affirmed.

SCARIANO and McCORMICK, JJ., concur.