2025 IL App (1st) 241020-U
No. 1-24-1020
Order filed September 30, 2025

Sixth Division

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| LAVERNEDRA WILSON, VIRGINIA CARR, SANDRA CARR TAYLOR, and MARIE CARR, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 22 L 1707 |
| SPENCER LEAK & SONS FUNERAL HOME LTD., SPENCER LEAK SR., and ANTHONY LEFLORE, | ) ) ) ) | The Honorable Thomas More Donnelly, Judge, presiding. |
| Defendants-Appellees. | ) | |

JUSTICE HYMAN delivered the judgment of the court.
Justices Pucinski and Gamrath concurred in the judgment.

¶ 1    *Held*:   Affirming order denying motion for new trial on damages where appellants failed to show trial errors, if any, were substantially prejudicial or affected the outcome.

¶ 2    When Chorsie Ray died in March 2020, her daughters entrusted Leak & Sons Funeral Home to carry out her wish for cremation. Instead, because the funeral home failed to obtain a death certificate as required by law, Ray was not cremated. Before admitting fault, Leak &

Sons blamed Ray's physician for the delay. The sisters then chose burial, distrusting the funeral home and fearing they might not receive the correct remains. They sued Leak & Sons, its owner, and the funeral director, alleging negligent interference with their right to control the time, place, and manner of their mother's final disposition, causing them emotional distress.

¶ 3 The trial court granted summary judgment on negligence against the defendants (collectively "Leak & Sons") and held a two-day jury trial limited to proximate cause and damages. The jury found that Leak & Sons' negligence proximately caused injury and awarded each sister $10,000, plus costs. The sisters moved for a new trial on damages, citing multiple trial errors, which the trial court denied, concluding that the sisters received a fair trial and that any errors were either cured or harmless.

¶ 4 The sisters argue that repeated violations of orders *in limine*, erroneous evidentiary rulings, improper jury instructions, and the court's refusal to strike two jurors for cause, individually and cumulatively, deprived them of a fair trial. We affirm. The sisters fail to show substantial prejudice or that the outcome would have been different absent the claimed errors.

¶ 5                                                     Background

¶ 6 Chorsie Ray died on March 19, 2020, in the emergency room at St. Bernard Hospital. After her memorial service, Leak & Sons told the daughters they could pick up the ashes in about two weeks. When Marie Carr, one of Ray's daughters, called two weeks later, a funeral home employee said cremations were backed up due to COVID-19. Weeks after that, daughter Sandra Carr Taylor called and learned that the cremation had not occurred because Ray's treating physician had not returned the death certificate. By statute, the physician must sign within 48 hours, and the funeral home must file it within seven days and before cremation. See 410 ILCS 535/18(1), (2) (West 2022).

¶ 7     Carr Taylor asked the employee to confirm the physician's contact information; the employee said she did not have it, though the family had supplied it. Realizing the funeral home had never sent the certificate to the doctor, Taylor asked to speak with owner Spencer Leak, Sr. He, too, blamed the physician. Carr Taylor challenged that explanation. Leak, Sr. apologized and said he would send the certificate for signature, which he did.

¶ 8     Later that day, the funeral home's vice president, Spencer Leak, Jr., called Taylor. She testified that he was aggressive and rude, and again blamed the physician despite his father's admission of error. Leak, Jr. denied yelling at Taylor and also testified he could not remember speaking with her.

¶ 9     After Carr Taylor reported these events, the sisters elected burial. They no longer trusted Leak & Sons and feared receiving the wrong remains if cremation went forward. The funeral home offered a refund, which the sisters declined.

¶ 10    The sisters sued Spencer Leak & Sons, Spencer Leak, Sr., funeral director Anthony LeFlore, and Ray's medical providers, alleging negligent interference with their right to possess their mother's remains and seeking emotional-distress damages for the delay and resulting burial, which did not honor her preference for cremation. The sisters voluntarily dismissed their claims against all defendants except Leak & Sons, Leak, Sr., and LeFlore.

¶ 11                                Summary Judgment

¶ 12    Before trial, the sisters sought summary judgment on negligence, arguing that Leak & Sons' failure to meet statutory death certificate deadlines established a *prima facie* case. The court initially denied the motion, reasoning that the sisters also had to show unreasonableness under the circumstances. On reconsideration, the court entered a directed liability finding for the sisters, leaving proximate cause and damages for trial.

¶ 13                              Pretrial Motions *in Limine*

¶ 14        The parties presented multiple pretrial motions *in limine*. The sisters sought to bar evidence

or innuendo that they were at fault. Specifically, they wanted to exclude "[e]vidence regarding

other potential options [the sisters] theoretically had short of burying their mother *** in part,

because Defendants have not asserted any affirmative defense putting [the sisters'] conduct at

issue." They also sought to bar evidence that they "could have hired a different funeral home

to perform the cremation." Because Leak & Sons had not asserted an affirmative defense of

mitigation of damages, the trial court granted the motion.

¶ 15        The parties offered competing motions *in limine* as to the admissibility of evidence about

the impact of COVID-19 on the funeral industry. The trial court allowed COVID-19 evidence

relevant to proximate cause but not to excuse negligence. The court also granted a motion *in*

*limine* barring Leak & Sons from arguing that the sisters were contributorily negligent or failed

to mitigate damages.

¶ 16        The trial court granted the sisters' motions barring personal attacks on their counsel and

evidence of Leak & Sons' community standing or good deeds. But the trial court found that

the sisters opened the door to character evidence when their attorney stated during opening

statements that "it is never acceptable to lie to your customers" and detailed instances when

Leak & Sons' employees had lied to or repeated lies to his clients.

¶ 17                                        Trial

¶ 18        During jury selection, the sisters asked to remove two prospective jurors for cause based

on their support for a cap on damages. The court denied the challenges, finding that one juror

misunderstood the question and the other had affirmed that she would follow the law and

evidence. The sisters used peremptory challenges on these prospective jurors.

¶ 19 Before opening statements, the trial court sustained the sisters' objection to a defense PowerPoint slide stating "the Plaintiffs had other choices that they could have gone to another funeral home," as inconsistent with the *in limine* ruling that barred evidence that the sisters were at fault. Nonetheless, during his opening statement, defense counsel displayed the slide until the trial court ordered him to "move on." Defense counsel also suggested "the Plaintiffs had other choices" and "could have gone to another funeral home," followed by a rhetorical question, "Why didn't they go elsewhere?" The trial court sustained the sisters' objections to those statements.

¶ 20 The first witness, Carr Taylor, testified that when Ray died, she and her sisters intended to cremate her and divide her ashes. Carr Taylor planned to put some ashes in a necklace and keep some in an urn. But after the funeral home lied about the delay with the cremation, she and her sisters no longer trusted Leak & Sons and were not "confident that if we allowed them to cremate my mom, we would have her remains." She and her sisters were "devastated" that they had to bury their mother, but they did not think they had the option to go to another funeral home for cremation.

¶ 21 Carr Taylor testified she felt terrible knowing her mother wanted cremation but they wanted to give her a resting place. She was saddened not to have her mother "near me *** at all times," and visits her mother's grave five to six times a year. She still feels pain because Leak & Sons did not honor their mother's wishes, but her pain has reduced over time.

¶ 22 On cross, Carr Taylor acknowledged Leak & Sons' reputation and that her family had used them before. She also said that her mother never put her wishes in writing or expressed negative views about burial. Nor did she know if her mother wanted her ashes to be placed in a necklace.

Twice, the trial court sustained objections after the defense asked whether the sisters sought other funeral homes or crematoriums.

¶ 23    Lavernedra "Catrice" Wilson testified that she and her mother were close, and she, too, wanted to wear the ashes. Burial felt like a violation and caused a family "breakdown," as their mother had told them since childhood, she wanted cremation. The sisters decided to bury their mother so they could feel safe knowing where she was. Wilson felt betrayed, angry, and sad that they had not received the same treatment the family had previously received from the defendants. Wilson has a cousin's ashes and finds it hurtful not to have her mother's. On cross, she agreed their mother had no will, did not document her preference for cremation, and never said burial was impermissible.

¶ 24    Virginia Carr cried when she learned her mother had not been cremated. She described her mother as her best friend, protector, and provider, and said not having ashes to keep close was painful. Similarly, Marie Carr described her mother as her best friend and confidante, her "rock," and the funeral home's actions compounded her grief. She planned to keep ashes in a locket and urn, felt she failed her mother by not having her cremated, and did not trust Leak & Sons to return the correct remains: "It could have been anybody."

¶ 25    Other witnesses corroborated the emotional impact. For instance, Carr Taylor's son, Derell Lawless, testified he heard his mother scream on learning of the delay, which was unlike anything he had heard before. On Ray's birthday, the first year after she died, he saw his aunt Virginia Carr crying that her mother was "in the ground instead of around her neck."

¶ 26    Leak & Sons called Spencer Leak, Jr. He traced the funeral home's history since 1933 and its 2,900 annual funerals, which reached 3,800 in 2020 due to COVID-19. Over objection, he

described staffing shortages, fear of contact with bodies, quarantines, and gaps in office personnel, requiring janitors and drivers to answer phones.

¶ 27    Leak, Jr. acknowledged that the funeral home made a mistake with Ray's paperwork, and he felt bad about it. He agreed that grieving families deserve accurate information and that lying is unacceptable. He denied lying or being rude to Carr Taylor. Once the delay was realized, he apologized and offered a full refund, which the sisters declined.

¶ 28    In closing, defense counsel accused the sisters' counsel of calling Leak, Jr. a liar, calling it "galling" for Leak, Jr. to sit silently while a "young man" attacked his character, called him a liar, and accused him of treachery and fraud. The sisters repeatedly objected that these remarks violated the *in limine* order, which barred personal attacks. The trial court sustained the objections.

¶ 29    The jury awarded each sister $10,000 (total $40,000), plus costs. The sisters moved for a new trial on damages, arguing the trial court erred in (i) allowing Leak & Sons to violate motions *in limine* repeatedly, (ii) allowing Leak & Sons to introduce evidence about COVID-19 to garner sympathy and to suggest that they were not negligent, (iii) allowing Leak & Sons to bolster their reputation improperly, (iv) refusing a proposed jury instruction, and (v) failing to excuse two jurors for cause. The sisters also argued that cumulatively these errors deprived them of a fair trial.

¶ 30    After a hearing, the trial court denied the motion, finding a fair trial and that any errors did not substantially affect the result. The court described the sisters' damages case as "pretty weak," found their testimony unpersuasive, and noted "complications with the story," including why cremation did not proceed after the delay, an aspect the court believed the jury did not understand. The court concluded the award reflected credibility issues, not *in limine*

rulings or juror seating. As to COVID-19 testimony, the court ruled that any potential prejudice was cured by its instruction that the jury not decide based on sympathy, prejudice, or bias.

¶ 31                                                    Analysis

¶ 32        As a preliminary matter, two days after filing their reply brief, the sisters moved to file an amended reply brief. We took the motion with the case. The sisters stated that the amendment acknowledged contrary authority on the new trial standard and made other substantive edits, but that Leak & Sons would not be prejudiced given the prompt filing.

¶ 33        Although our rules do not expressly address amended reply briefs, Supreme Court Rule 343 permits extensions for good cause. Ill. S. Ct. R. 343 (eff. July 1, 2008). The sisters showed good cause and no prejudice to Leak & Sons. Accordingly, we grant the motion.

¶ 34        Turning to the merits, the cause of action for tortious interference with the right to possess a dead body rests on the principle that " 'while in the ordinary sense, there is no property right in a dead body, a right of possession of a decedent's remains devolves upon the next of kin in order to make appropriate disposition thereof, whether by burial or otherwise.' " *Cochran v. Securitas Security Services USA, Inc.*, 2017 IL 121200 ¶ 12 (quoting *Leno v. St. Joseph Hospital*, 55 Ill.2d 114, 117 (1973). For more than a century, Illinois courts have recognized that interference with this right is an actionable wrong and a plaintiff is entitled to recover damages for the mental suffering proximately caused by the defendant's misconduct. *Id.*

¶ 35        The summary judgment order established Leak & Sons' negligence. The only issues before the jury were whether their negligence proximately caused the sisters' mental suffering and, if so, the amount of damages. The sisters contend they are entitled to a new trial on damages based on the individual and cumulative effect of errors, specifically, (i) allowing defendants' attorney to violate *in limine* orders repeatedly and intentionally, (ii) allowing evidence of how

COVID-19 affected Leak & Sons to garner sympathy for them, (iii) allowing evidence about Leak & Sons character, (iv) overruling for cause objections to two jurors, and (v) failing to instruct the jury on the law properly. We address each in turn.

¶ 36                                    Evidentiary Rulings

¶ 37         Generally, we review evidentiary rulings for abuse of discretion and questions of legal interpretation *de novo*. *Bland v. Q-West, Inc*., 2023 IL App (2d) 210683, ¶ 22; *Ittersagen v. Advocate Health & Hospitals Corp*., 2020 IL App (1st) 190778, ¶ 75. A new trial requires substantial prejudice affecting the outcome with the appellant bearing the burden. *Simmons v. Garces*, 198 Ill. 2d 541, 566–67 (2002); *Ramirez v. FCL Builders, In*c., 2014 IL App (1st) 123663, ¶ 198. Here, the rulings turned on case-specific circumstances rather than broad legal interpretations, so an abuse-of-discretion review applies. *People v. Caffey*, 205 Ill. 2d 52, 89-90 (2001).

¶ 38                              Violations of Motions *in Limine*

¶ 39         A motion *in limine* excludes inadmissible evidence and bars related questioning to avoid prejudice from objections before the jury. *Tucker v. Division Sales, Inc*., 315 Ill. App. 3d 472, 476. The violation of an order *in limine* is reversible error when: (i) the order is specific, (ii) the violation is clear, and (iii) the opposing party is prejudiced by it. *Branum v. Slezak Construction Co., Inc*., 289 Ill. App. 3d 948 (1997).

¶ 40         The sisters contend Leak & Sons' attorney intentionally and repeatedly violated pretrial *in limine* orders during opening and closing by (i) making personal attacks on their attorney and (ii) suggesting the sisters should have used a different funeral home. The sisters assert the violations prejudiced them and warrant a new trial on damages.

¶ 41    As to personal attacks, the sisters assert that during closing arguments, Leak & Sons' attorney falsely accused their attorney of calling Leak, Jr. a liar, belittled him as "some young man," to undermine his credibility, "framed plaintiffs' closing argument as an unethical choice made by counsel," and suggested that the sisters' attorney failed "to deliver" on the evidence he promised to show the jurors.

¶ 42    As the sisters' note, the record does not show that their attorney called Leak, Jr. a "liar," during his opening or closing statements. He did, however, repeatedly allege that Leak & Sons, its employees, and Leak, Jr., "lied" to their clients. We see little distinction between calling someone "a liar" and saying they "lied." Thus, the contention that this was a false statement or a personal attack on plaintiffs' counsel is without merit. Similarly, the sisters do not explain how referring to their attorney as "some young man" undermined his credibility. Leak & Sons' attorney explained that the Leaks had established a reputation over 90 years and that it was difficult for a younger man to attack their character.

¶ 43    Moreover, the trial court sustained objections to those statements, as well as other statements in closing to which the sisters objected, namely, that the sisters' attorney made an "unethical choice" in framing the case and failed to deliver evidence he promised in opening statements. " 'Generally, the prompt sustaining of an objection by a trial judge is sufficient to cure any error in a question or answer before the jury.' " *Allen v. Sarah Bush Lincoln Health Center*, 2021 IL App (4th) 200360, ¶ 192 (quoting *People v. Mims*, 403 Ill. App. 3d 884, 897 (2010)). The law presumes jurors follow the trial court's instructions. *Id.*

¶ 44    The trial court immediately sustained objections to the allegedly prejudicial comments in closing arguments and informed the jury that closing arguments are not evidence, curing any potential error. "[A] counsels' misstatement will not deny a party a fair trial where the

misstatement comprises only a small segment of the closing argument and the jury is instructed that closing arguments are not evidence. See, *e.g.*, *Lagoni v. Holiday Inn Midway*, 262 Ill. App. 3d 1020, 1035 (1994).

¶ 45    The sisters also contend the trial court erred by allowing defense counsel to repeatedly suggest during opening and closing statements and during Carr Taylor's cross-examination that the sisters could have mitigated their damages by using a different funeral home for cremation. They point to defense counsel showing the jury a slide during opening statements, purportedly stating that "the Plaintiffs had other choices that they could have gone to another funeral home," which the trial court had barred, and asking the rhetorical question, "Why didn't they go elsewhere?"

¶ 46    In ruling on the motions *in limine*, the trial court prohibited evidence or argument that the sisters were negligent or could have mitigated their damages. But the court allowed Leak & Sons to present evidence to show their negligence was not the proximate cause of the sisters' injuries. The sisters contend they chose burial over cremation because they lost confidence in the funeral home. Leak & Sons disputed this because they allowed the funeral home to bury their mother. In other words, they *could* have chosen a different funeral, not that they *should* have done so. The latter pertains to contributory negligence and mitigation of damages, while the former concerns proximate cause, which the trial court permitted.

¶ 47    As for the slide defense counsel purportedly showed the jury during opening statements, it does not appear in the record on appeal. An appellant has the burden of presenting a sufficiently complete record to support their claim of error and doubts arising from the incompleteness of the record will be resolved against them. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Absent the slide, we cannot find that it prejudiced the sisters.

¶ 48          Moreover, the trial court immediately sustained the sisters' objection to defense counsel rhetorically asking whether they could have gone to a different funeral home, which cured any prejudice. *Sarah Bush Lincoln Health Center*, 2021 IL App (4th) 200360, ¶ 192. And, as the trial court noted, the jury ruled in favor of the sisters on liability; thus, they cannot show substantial prejudice that would warrant a new trial. *Simmons,* 198 Ill. 2d at 566-67.

¶ 49          The sisters raise two additional issues with defense counsel's closing argument. First, they contend that defense counsel attempted to improperly present the jury with deposition testimony not admitted into evidence. The sisters acknowledge that the trial court sustained their objection and that the deposition testimony was not admitted. As noted, the trial court instructed the jury that closing arguments are not evidence and that "any statement *** made by the lawyers that's not supported by the evidence as you heard it or documents *** received by the Court, you should disregard." To repeat, a jury is presumed to abide by that instruction. *People v. McCoy*, 238 Ill. App. 3d 240, 252 (1992).

¶ 50          Secondly, the sisters contend Leak & Sons mischaracterized Carr Taylor's and Wilson's testimony by suggesting they testified their mother wanted her ashes placed in a necklace. The sisters are correct that neither made that statement. But Leontyne Ray, their cousin, did testify that Ray told her she wanted her ashes placed in a necklace or other piece of jewelry. And the sisters' attorney said in the closing argument that "Marie [Carr] feels a failure, especially for announcing [Ray] specifically told [her] *** that she wanted all of her sisters to have necklaces. The burden she must carry from this is unimaginable." Even if Leak & Sons' attorney misstated which witness testified that Ray said she wanted her ashes placed in a necklace (which the sisters' attorney appears to have also misspoken), nothing suggests that the error caused substantial prejudice or affected the outcome. *Simmons,* 198 Ill. 2d at 566-67.

¶ 51                                    COVID-19 Evidence

¶ 52        The sisters argue that COVID-19 testimony was a sympathy ploy. See *Lorenz v. Siano*, 248 Ill. App. 3d 946, 953 (1993) ("It has long been the rule in Illinois that appeals to the passion or sympathy of the jury are improper"). A trial court has broad discretion in deciding which evidence the jury hears, and its rulings, even if erroneous, are not reversed unless they result in substantial prejudice. S*chultz v. Northeast Illinois Regional Commuter Railroad Corp.*, 201 Ill. 2d 260, 296 (2002). Harmless errors do not warrant reversal. *Neuhengen v. Global Experience Specialists, Inc.*, 2018 IL App (1st) 160322, ¶ 157.

¶ 53        The trial court allowed limited evidence of COVID-19 on the issue of proximate causation to support Leak & Sons' contention that COVID-19 delayed cremations. It was well within the court's discretion to allow that evidence. Even if it erred, however, the error was harmless, as the plaintiffs prevailed on the issue of proximate causation, with the jury returning verdicts in their favor. Moreover, to the extent that the sisters contend that defense counsel introduced the COVID-19 evidence to garner sympathy for his clients, the trial court cured any prejudicial effect by instructing the jury twice that it should not base its verdict on sympathy. Thus, plaintiffs cannot show prejudice, let alone substantial prejudice.

¶ 54                                    Character Evidence

¶ 55        Character evidence is generally inadmissible to prove conduct in conformity (Ill. R. Evid. 404(a), but becomes admissible in rebuttal when a party injects reputation or character into the case. *Werdell v. Turzynski*, 128 Ill. App. 2d 139, 150–51 (1970). Before trial, the sisters filed a motion *in limine* seeking to bar evidence that Leak & Sons has a good reputation in the community and performed essential services during the pandemic. The trial court provisionally granted the motion *in limine* but told Leak & Sons that "If [the sisters' counsel] does anything

to open the door, ask for a sidebar outside the presence of the jury and say, Judge, he's opened the door."

¶ 56    During opening statements, the sisters' attorney addressed Leak & Sons' reputation in the community, stating, "It does not matter if you're an important institution or doing good and moral work. If you are careless and you harm someone, you are responsible for all the damage that you have caused." The sisters' attorney also told the jury that Leak & Sons lied to their customers, saying during opening statements that "it is never acceptable to lie to your customers," "we're suing Leak & Sons Funeral Home [because] it chose to break the rule that you must never lie to your customers," "Leak & Son lied and this family's spirit broke."

¶ 57    After a sidebar, the trial court ruled that the sisters' attorney had opened the door on character evidence, allowing Leak & Sons' attorney to "dump it all in." We will uphold the trial court's rulings on evidentiary issues unless they constitute an abuse of discretion. *Ittersagen*, 2020 IL App (1st) 190778, ¶ 75. Based on the sisters' attorneys' violation of the *in limine* order concerning Leak & Sons' reputation, the trial court did not abuse its discretion in allowing the character evidence.

¶ 58                                         Jury Instructions

¶ 59    The sisters argue the instructions failed to convey that interference with their right to control disposition was actionable and fault the refusal of their non-IPI 10.04 duty instruction ("use ordinary care not to interfere ***"). The court declined the instruction because negligence was not at issue after summary judgment.

¶ 60    Civil litigants are entitled to have the jury instructed on the issues, governing law, and facts that must be proved to support a verdict. *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 505 (2002). We review for abuse of discretion, asking whether the instructions, as a whole, fairly

and correctly stated the law without misleading the jury and reverse only for serious prejudice. *Bailey v. Mercy Hospital & Medical Center*, 2021 IL 126748, ¶ 42.

¶ 61    The court instructed that next of kin are entitled to proper interment or cremation and that the sisters held the right to control time, place, and manner of disposition; defined negligence; gave an issues instruction stating the sisters claimed defendants interfered with that right; and told the jury negligence had been determined. Viewed together, the instructions adequately conveyed that interference tied to negligence was actionable. Declining the sisters' proposed non-IPI 10.04 was not an abuse of discretion.

¶ 62                                      For-Cause Challenges

¶ 63    The sisters argue the court erred in refusing to strike two prospective jurors who favored damages caps, forcing them to exhaust peremptory challenges and accept an unwanted juror.

¶ 64    We will not reverse a trial court's determination that a juror is competent unless the ruling is against the manifest weight of the evidence. *In re Commitment of Trulock*, 2012 IL App (3d) 110550, ¶ 43. Reversal for failure to strike for cause requires a showing of prejudice, and establishing that it was forced to accept the objectionable juror and was unable to excuse the juror due to a lack of peremptory challenges. *Id*. ¶ 45. Mere suspicion of bias or partiality is not enough. *Ittersagen v. Advocate Health & Hospitals. Corp.*, 2020 IL App (1st) 190778, ¶ 57.

¶ 65    The sisters fail to show that the seated juror was not fair or impartial or prejudiced. They acknowledge the juror's "views were not sufficient for a 'for cause' challenge" but contend that as a corporate executive, he "could be reasonably expected to subconsciously place himself in the shoes of the defendants rather than the plaintiffs." The sisters suspect that the

juror was pro-defendant, citing nothing in his questionnaire or answers during *voir dire* to suggest prejudice or that he would not be an impartial juror. We find no grounds for reversal.

¶ 66                                    Cumulative Error

¶ 67        The sisters argue cumulative error warrants a new damages trial, citing the closeness of the evidence on whether their grief stemmed from the death or from Leak & Sons' negligence and pointing to *in limine* violations and sympathy appeals. For support, they cite *Tucker v. Division Sales, Inc.*, 315 Ill. App. 3d 472 (2000) and *Wagner v. Zboncak*, 111 Ill. App. 3d 268 (1982), where the trial courts ruled *in favor* of the party that violated the orders *in limine*, resulting in prejudice to the losing party. Here, the jury ruled *against* Leak & Sons.

¶ 68        The sisters also contend they should not be penalized for prevailing on proximate cause and that a low award can reflect prejudice or sympathy, citing *Drakeford v. University of Chicago Hospitals*, 2013 IL App (1st) 111366. There, a jury awarded $4.6 million (reduced to $3 million) to a mother who alleged that the hospital engaged in willful and wanton misconduct by having her daughter buried in a mass, unmarked grave without her knowledge or consent and without performing a requested autopsy. Leak & Sons counters that awards under $10,000 have been upheld in remains-handling cases in other jurisdictions.

¶ 69        Illinois courts disfavor cross-case comparisons when assessing damages. *Richardson v. Chapman*, 175 Ill. 2d 98, 114 (1997). We decline to do so, particularly considering the record and the trial judge's steady and responsible stewardship of the trial. The plaintiffs' award is not against the manifest weight and denying a new damages trial was not an abuse of discretion.

¶ 70                                    "Inherent Prejudice"

¶ 71        In their amended reply brief, the sisters urge a new trial standard based on "inherent prejudice," relying on *Kroft v. Viper Trans, Inc.*, 2025 IL App (1st) 240220. In *Kroft*, the

plaintiffs' attorney made a social media post during trial titled, "What Jurors Should Know But Don't," revealing information excluded from evidence, namely that a prior jury had awarded his clients $43 million, that the trial court ordered a new trial, and that his clients' injuries had worsened in the interim. The appellate court found that (i) the post was improperly intended to reach the jury and influence its verdict and (ii) the trial court abused its discretion in questioning jurors to determine if they had read the post by posing questions "suggestive toward a negative answer and [that] may have primed the jurors away from being publicly forthcoming about whether the social media posts" coming to their attention. *Id*. ¶ 55.

¶ 72    Because of this "clear abuse of discretion" in questioning the jurors, the appellate court did not need to decide whether the posts were "inherently prejudicial to the defendants' right to a fair trial." *Id*. ¶ 59. Nonetheless, the court stated, "We believe also that it is important to establish a clear precedent that the appellate court will not tolerate any attempts by attorneys, litigants, or those acting on their behalf to use social media or the Internet to communicate information to jurors outside the normal courtroom process." *Id*. We agree that attempts to influence jurors through social media require a strong judicial response. Yet, *Kroft* expressly declined to hold that a new trial based on "inherent prejudice."

¶ 73    The sisters' reliance on *Browning v. Advocate Health & Hospital Corp*., 2023 IL App (1st) 221430 is also not persuasive. The sisters urge us to adopt *Browning* dissent's notion that a new trial can be given for "inherent prejudice," although they acknowledge that *Browning* reaffirmed the standard for granting a new trial. As the *Browning* majority found, "inherent" prejudice is a "fanciful" theory unsupported by case law. *Id*. at ¶ 81.

¶ 74    Affirmed.