THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SEAN A. JEROME, Defendant-Appellant.

Second District   No. 2—89—0002

Opinion filed December 6, 1990.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, for appellant.

Paul A. Logli, State's Attorney, of Rockford (William L. Browers and David A. Bernhard, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GEIGER delivered the opinion of the court:

The defendant, Sean A. Jerome, was charged by indictment with first-degree murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a)). Following a jury trial, he was convicted of the offense and sentenced to 22 years' imprisonment. On appeal, the defendant contends that (1) the trial court erred in refusing to instruct the jury on self-defense and second-degree murder, and (2) the second-degree murder statute is unconstitutional.

The evidence adduced at trial showed that in the early morning hours of June 18, 1988, the victim, Eugene Budnik, was on duty as desk clerk at the Grand Hotel in Rockford. At about 3:30 a.m., a hotel resident, James Orehowsky, entered the building in which the hotel is located. In the lobby, he met another resident, Clarence Suggs, and the defendant, a former resident. He had seen the two men earlier in the evening at an outdoor gathering near the hotel. At the gathering, Orehowsky noticed that the defendant wore a "buck knife" in a sheath at his side. Orehowsky had asked about the knife, and the defendant had shown it to him. The knife had a 4-inch blade and a ribbon design on the handle. In the lobby, Suggs asked Orehowsky if he would keep the desk clerk busy, but Orehowsky refused. Orehowsky proceeded up the stairs to the second floor where the hotel desk is located. At the desk he asked for his room key; Suggs was right behind him, and he also got his key.

While the men were getting their keys, Budnik was yelling at someone who was going up the stairs. Budnik then ran up the stairs after the person. The hotel has a policy that residents must leave their keys at the desk and that no visitors are allowed after 10 p.m. Orehowsky followed Budnik up the stairs to the third floor, where Orehowsky's room was located. He saw Budnik standing in the door of the bathroom holding the door open and yelling at someone to get out. The defendant came out of the bathroom and walked toward the stairs with Budnik close behind. Orehowsky did not hear the two say

anything as they went down the hall, and he did not see Budnik touch the defendant. Orehowsky got his coat from his room and went down the hall toward the stairs. As he neared the stairs, he heard yelling. He heard the defendant say that he did not like being called a "bitch fag." Budnik responded, "Do something about it." Orehowsky proceeded down the stairs. When he got to the second-floor landing, he saw Budnik. There was a slice in Budnik's shirt and a big bloodstain on his back. Orehowsky administered first aid, and hotel personnel and the police were summoned.

Budnik told another desk clerk that the defendant had stabbed him. Budnik was still alive when the police arrived, and he also told them that the defendant had stabbed him. Budnik later died of the stab wound in his back.

Later that morning, the defendant was found asleep in his car. At the police station, the defendant admitted having stabbed Budnik and told the police where his knife could be found. He told the police that as he and Budnik walked down the stairs, Budnik pushed him on the shoulder to speed him up. When they got to the second-floor landing, the defendant confronted Budnik about rumors that Budnik had been telling people that the defendant was a homosexual. Budnik again ordered the defendant out, pushed him on the shoulder, and turned around to walk back to the desk. The defendant pulled out his knife and stabbed Budnik once in the back. He said that he intended to pull the knife out so he could cut Budnik, but he pulled the knife out wrong and was holding it "in a stabbing manner," so he stabbed Budnik.

The defendant testified that after Budnik ordered him out of the bathroom and they were walking down the hall toward the stairs, Budnik was holding on to his shirt and leading him down the hall. Approximately one week before, the defendant had injured his ankle at a swimming pool, and his ankle was still painful. Budnik let the defendant walk down the first flight of stairs on his own. At the top of the second flight, Budnik shoved the defendant, and the defendant skipped a few steps; the defendant told him to stop it. At the second-floor landing, the defendant confronted Budnik about the rumors he had heard. Budnik turned the defendant around by the shoulder and started shoving again. As the defendant went down the stairs, Budnik was pushing him from behind. The defendant told him to stop. The defendant skipped a couple of stairs and drew his knife to "come around" and fend off Budnik. When he was turning around, Budnik pushed him again, and "the knife just stuck him" in the back. The defendant said that he was not trying to kill or to hurt Budnik; he

was just trying to keep him away, to scare him and to make him stop pushing. When Budnik was pushing him, he was afraid that "his knee was going to give out or his ankle or something and [he] was going to fall down the stairs."

At the jury-instruction conference, the defendant tendered self-defense instructions and second-degree murder instructions, which were refused by the trial court. The defendant was convicted of first-degree murder and sentenced to 22 years' imprisonment.

The defendant contends that the trial court erred in refusing the instructions on self-defense and on second-degree murder based on the defendant's having unreasonably believed that he had acted in self-defense. He argues that his testimony concerning the argument between him and Budnik and his testimony that Budnik was pushing him placing him in fear of falling down the stairs were sufficient to support the instructions.

To support an instruction for either self-defense or second-degree murder based upon an unreasonable belief, a defendant must present some evidence from which a jury could conclude that unlawful force was threatened against him and that he was not the aggressor. (*People v. Timberson* (1989), 188 Ill. App. 3d 172, 176-77; see also Ill. Rev. Stat. 1989, ch. 38, pars. 7—1, 9—2(a)(2).) He also must show, in the case of self-defense, that he reasonably believed: (1) that the danger of harm was imminent; (2) that the use of force was necessary to avert the danger; and (3) that the kind and amount of force used were necessary; in the case of second-degree murder based upon an unreasonable belief that force was necessary, he must show that he unreasonably believed that he acted in self-defense. (*Timberson*, 188 Ill. App. 3d at 176-77; see also Ill. Rev. Stat. 1989, ch. 38, pars. 7—1, 9—2(a)(2); *People v. Lockett* (1980), 82 Ill. 2d 546, 553 (discussing instruction on voluntary manslaughter statute, predecessor of second-degree murder statute).) Even a slight amount of evidence will raise the issues and justify an instruction; however, where the defenses are not supported by the evidence, an instruction may be properly refused. See *People v. Everette* (1990), 141 Ill. 2d 147, 157.

In this case, the defendant's evidence to support his subjective belief for the need to use force included that, while the defendant was walking down the stairs, Budnik was pushing him from behind. There was no evidence that the defendant touched Budnik or threatened him before the pushing started. Also, there was evidence that he had suffered a recent ankle injury, and he testified he was afraid that if Budnik continued to push him, his ankle might give out and he might fall down the stairs.

■ It is not dispositive, contrary to the State's argument in the trial court, that the defendant's testimony also suggested an accident theory. While it is true that the defendant testified that he did not intend to hurt or to kill Budnik, a homicide defendant is entitled to an instruction on self-defense where there is some evidence in the record to support the defense, even where the defendant testifies that he accidentally killed the victim. *People v. Everette*, 141 Ill. 2d at 157.

■ Nevertheless, we have considered the evidence and find it is insufficient to support a jury finding either that the defendant acted in self-defense or that the defendant had the unreasonable belief that his action was in self-defense. Given the defendant's apparent trespass, the evidence is only very slight that Budnik, who apparently considered it his job to enforce the hotel's no-visitor rule, threatened unlawful force against him. (*Cf. People v. Austin* (1989), 133 Ill. 2d 118, 126.) However, that is of course not decisive. Our conclusion is based instead upon the fact that the defendant did not testify or otherwise present evidence that he believed he was in imminent danger of death or great bodily harm. His claimed fear of a fall down the stairs does not, under these circumstances, support a finding that the defendant even unreasonably believed that his resort to use of his knife was necessary. That failing is critical, and we find that the court could properly deny the two instructions at issue.

This is not the end of the inquiry, however, because the defendant has challenged the constitutionality of the second-degree murder statute. The defendant alleges that the statute violates due process because it impermissibly shifts the burden of proof onto the defendant. The second-degree murder statute has been challenged on due process grounds, and it withstood the challenge. (*People v. Buckner* (1990), 203 Ill. App. 3d 525.) We agree with the result reached in *Buckner*; however, the defendant here has presented certain arguments not directly addressed in *Buckner*.

The Criminal Code of 1961 was amended in 1987, and the offense of voluntary manslaughter was eliminated and replaced by that of second-degree murder. (Pub. Act 84—1450, §2, eff. July 1, 1987.) Under the new statute, a person commits second-degree murder when he commits first-degree murder and either of the mitigating factors (provocation or unreasonable belief) is present. (Ill. Rev. Stat. 1987, ch. 38, par. 9—2(a).) When a defendant is on trial for first-degree murder and evidence of either mitigating factor is presented, the burden of proof is on the defendant to prove the mitigating factor by a preponderance of the evidence before the defendant can be found guilty of second-degree murder; the State still has the burden of prov-

ing all of the elements of first-degree murder, however. Ill. Rev. Stat. 1987, ch. 38, par. 9—2(c); see also *People v. Shumpert* (1989), 126 Ill. 2d 344, 351-52 (discussing differences between voluntary manslaughter and second-degree murder statutes).

Defendant contends that this scheme violates due process by shifting the burden to the defendant to prove second-degree murder. He contends that this scheme is analogous to that struck down by the Supreme Court in *Mullaney v. Wilbur* (1975), 421 U.S. 684, 44 L. Ed. 2d 508, 95 S. Ct. 1881. We disagree.

In *Mullaney*, Maine's felonious homicide statute was at issue. Maine's law recognized two kinds of homicide: murder and manslaughter. Murder was the unlawful killing of a human being with malice aforethought. Malice aforethought, an essential element of the offense, could be conclusively implied, however, unless the defendant could prove by a preponderance of the evidence that the killing occurred in the heat of passion; if the defendant could prove that, then the offense would be voluntary manslaughter. (421 U.S. at 686, 44 L. Ed. 2d at 512, 95 S. Ct. at 1883.) The Supreme Court found that this scheme impermissibly shifted the burden of proof on the question of malice onto the defendant; malice was an element of murder, and the statute allowed that element to be presumed unless defendant could disprove it. (421 U.S. at 701, 703, 44 L. Ed. 2d at 520, 522, 95 S. Ct. at 1890, 1892.) The due process clause protects the accused from conviction except upon proof beyond a reasonable doubt of every element of the crime with which he is charged (*In re Winship* (1970), 397 U.S. 358, 364, 25 L. Ed. 2d 368, 375, 90 S. Ct. 1068, 1073), and the Maine homicide scheme deprived the accused of that protection (*Mullaney*, 421 U.S. at 704, 44 L. Ed. 2d at 522, 95 S. Ct. at 1892; see also *Patterson v. New York* (1977), 432 U.S. 197, 212-16, 53 L. Ed. 2d 281, 293-95, 97 S. Ct. 2319, 2328-30 (discussing *Mullaney* holding).

Defendant contends that malice is a part of the offense of first-degree murder in Illinois and that the new homicide scheme presumes malice unless defendant disproves it by proving a mitigating factor, just as the Maine statute did. We disagree. Initially, we note that when the Criminal Code of 1961 was amended in 1987, the elements of murder were not changed, although the offense was renamed first-degree murder. (Compare Ill. Rev. Stat. 1985, ch. 38, par. 9—1(a), with Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a).) A person commits first-degree murder when he kills another without lawful justification if, in performing the acts which caused death, he intends to kill or do great bodily harm, or he knows that such acts will cause death, or he knows that such acts will create a strong probability of death or great bodily

harm, or he is attempting or committing a forcible felony. Ill. Rev. Stat. 1989, ch. 38, par. 9—1(a).

■ In drafting the murder (now first-degree murder) statute, the legislature intended to retain the common-law concepts of express and implied malice but to replace those terms with the more modern and less ambiguous terms of intent and knowledge respectively. (Ill. Ann. Stat., ch. 38, par. 9—1, Committee Comments, at 17 (Smith-Hurd 1979); *People v. Guest* (1986), 115 Ill. 2d 72, 96-97.) Therefore, while the concept of malice is still part of the murder statute, it is embodied in the element of intent or knowledge. In Illinois, a person acts with intent to kill (express malice) when his conscious objective or purpose is to cause death or great bodily harm to another person. (See Ill. Rev. Stat. 1987, ch. 38, par. 4—4; *Guest*, 115 Ill. 2d at 95.) A person acts with knowledge (implied malice) in Illinois when he is consciously aware that his conduct is practically certain to cause death or when he knows that his conduct creates a strong probability of death or great bodily harm. (See Ill. Rev. Stat. 1987, ch. 38, pars. 4—5(b), 9—1(a); *Guest*, 115 Ill. 2d at 96.) In order to prove murder (now first-degree murder), the State must prove intent or knowledge beyond a reasonable doubt.

■ In Maine, however, a killing became murder when it resulted from a deliberate, cruel act committed by one person against another, suddenly *without any or without a considerable provocation. (Patterson*, 432 U.S. at 215, 53 L. Ed. 2d at 295, 97 S. Ct. at 2330.) In other words, in Maine, absence of provocation was a part of the definition of malice; therefore, lack of provocation was an element of the crime, and the State had to prove that element beyond a reasonable doubt; it could not be presumed. (432 U.S. at 215-16, 53 L. Ed. 2d at 295, 97 S. Ct. at 2330.) Malice is defined differently in Illinois, and lack of provocation is not an element of the offense of first-degree murder in Illinois. The Illinois statute does not suffer the constitutional infirmity present in the Maine statute. Requiring the defendant to prove a mitigating factor in order to reduce the offense to second-degree murder does not violate due process. 432 U.S. at 210, 53 L. Ed. 2d at 292, 97 S. Ct. at 2327.

Defendant also contends that the mental states for first- and second-degree murder are inconsistent and that a defendant cannot, constitutionally, be required to prove an affirmative defense or mitigating factor which is inconsistent with or would negate an element of first-degree murder.

The defendant's argument relies heavily on the case of *People v. Hoffer* (1985), 106 Ill. 2d 186. He contends that *Hoffer* stands for the

proposition that the mental states involved in murder and in voluntary manslaughter are inconsistent, and he concludes, therefore, that the mental states in first and second-degree murder are inconsistent. The defendant's reliance on *Hoffer* is misplaced.

The inconsistency identified in *Hoffer* was in the guilty verdicts. The jury had been instructed that, in order to find the defendant guilty of murder, they had to find that he had not had an unreasonable belief in justification at the time of the killing; they were also instructed that, in order to find defendant guilty of voluntary manslaughter, they had to find that he had had that unreasonable belief; the jury returned guilty verdicts on both offenses. Under the instructions given in that case, the jury had found that the defendant both did and did not have an unreasonable belief in justification; the findings were logically inconsistent. Under those instructions, the mental states for murder and involuntary manslaughter were inconsistent. (106 Ill. 2d at 195.) There is, however, no inherent inconsistency between the mental states for first- and second-degree murder.

■ When a defendant is charged with first-degree murder, the State is required to prove death, causation and intent (or knowledge). (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a).) The defendant then has the opportunity to prove provocation or unreasonable belief in justification to reduce the offense to second-degree murder. (Ill. Rev. Stat. 1987, ch. 38, par. 9—2(a).) The existence of provocation or an unreasonable belief in justification, however, will not diminish or negate any of the proved elements of first-degree murder. The mitigating factor is a separate issue the existence of which the State is willing to recognize as a circumstance affecting the degree of culpability or the severity of punishment. See *Patterson*, 432 U.S. at 206-07, 53 L. Ed. 2d at 289-90, 97 S. Ct. at 2325.

We conclude that the second-degree murder statute does not violate due process.

The judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

REINHARD and McLAREN, JJ., concur.