THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
RODNEY BEATHEA, Defendant-Appellant.

Third District No. 3—91—0170

Opinion filed June 4, 1992.

Joseph N. Ehmann, of State Appellate Defender's Office, of Ottawa, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HAASE delivered the opinion of the court:

The defendant, Rodney Beathea, was charged by indictment with burglary. A jury found the defendant guilty and the court sentenced him to seven years' imprisonment. The defendant appeals. We affirm.

The defendant was an outpatient at Touchstone in Peoria, Illinois. Touchstone, now known as the McBean Center for the Treatment of Addictions, is a drug and alcohol treatment facility. Alcoholics Anonymous, Narcotics Anonymous and the County Work Release Center all use Touchstone for their various activities. On February 28, 1990, Willa Lucas, an employee of Touchstone, noticed that a video tape player was missing from a downstairs meeting room. The tape player had been sitting on a television set mounted on a wall near an outside window. The wires that connected the tape player to the television were wedged in the outside window. Lucas notified the police of the theft.

When the police arrived they took fingerprints and other samples from the window and the areas surrounding the television. The defendant's fingerprints were found on the inside of the window, on the window sash and on the screen that had covered the window. The screen was found on the outside of the building leaning against the building wall. In addition to the defendant's fingerprints, the police located the fingerprints of Robert Walker, six other unidentified prints, and several fabric impressions. According to the State's fingerprint expert, Walter Jatkowski, the six unidentified prints could have been made by one person or up to six different people. Jatkowski also stated that the fabric impressions found on the screen could have been made by a person wearing gloves.

At trial, Jatkowski further testified that the location of the prints on the outside of the window where entry into the Touchstone building was made, as well as the direction of the prints at the time they were impressed upon the window sash, window pane and screen, indicate that the screen was removed and the window forcibly opened. Jatkowski then demonstrated for the jury the location and direction of the prints identified as the defendant's. Under cross-examination, Jatkowski admitted that there is no scientific way to determine when the fingerprints were made. The defendant's fingerprints were not found on cable cords wedged in the window or on the television set. The tape player was never located.

The State also called Lea Pierson, a counselor's aide at Touchstone, to testify. Pierson explained that the window in question was

difficult to open and shut. Persons in Touchstone often opened the window to let cigarette smoke out of the building. On the day of the burglary several groups had used the basement meeting room, including the County Work Release Program. The defendant did not have permission, as an outpatient, to be in the room on the date of the burglary. The defendant had, however, attended a meeting in the room in early February of 1990.

At the close of the evidence, the parties presented closing arguments. During his rebuttal argument, the State's Attorney told the jury that it could infer from the evidence that the defendant's fingerprints on the screen had been recently made. The State's Attorney informed the jury that it could make this inference because the fingerprints were of a "high contrast." The State's expert, however, stated that there was no scientific way to determine when the fingerprints were made. The State's Attorney also told the jury that there was no evidence that the defendant had any business being in the meeting room. In fact, the evidence showed that the defendant had attended a meeting in the room in early February. The defendant offered no objection to the State's comments and did not include these alleged errors in his post-trial motion.

We are now called on to determine whether the defendant was proved guilty beyond a reasonable doubt and whether the prosecutor's comment constituted plain error.

It is the function of the jury to determine the credibility of the witnesses and assess the weight to be afforded evidence, and we may not lightly set aside such findings, nor substitute our own judgment for that of the jury. (*People v. Boclair* (1989), 129 Ill. 2d 458, 474, 544 N.E.2d 715.) However, it is our duty and we will not hesitate to reverse a judgment of conviction where the evidence is such that no rational trier of fact could have found a defendant guilty beyond a reasonable doubt because, taken in the light most favorable to the prosecution, the evidence is so palpably contrary to the verdict or the verdict is so unreasonable, unsatisfactory, or improbable so as to raise a reasonable doubt of defendant's guilt. (*Boclair*, 129 Ill. 2d at 474-75.) To sustain a conviction, the evidence must support a reasonable and moral certainty that the defendant committed the crime. *People v. Berland* (1978), 74 Ill. 2d 286, 308, 385 N.E.2d 649, *cert. denied* (1979), 444 U.S. 833, 62 L. Ed. 2d 42, 100 S. Ct. 63.

■ Where a conviction is based on circumstantial evidence, it is essential that the facts proved be not only consistent with the guilt of the accused, but they must be inconsistent with any other hypothesis of innocence. (*People v. French* (1978), 59 Ill. App. 3d 353, 359.) Fin-

gerprint evidence is circumstantial evidence *(People v. Malmenato* (1958), 14 Ill. 2d 52, 150 N.E.2d 806, *cert. denied* (1958), 358 U.S. 899, 3 L. Ed. 2d 148, 79 S. Ct. 222), and when a conviction is based solely on such circumstantial fingerprint evidence, the fingerprints must further satisfy both physical and temporal proximity criteria. *(People v. Rhodes* (1981), 85 Ill. 2d 241, 422 N.E.2d 605.) The fingerprints must have been found in the immediate vicinity of the crime and under such circumstances that they could only have been made at the time the crime occurred. *People v. Gomez* (1991), 215 Ill. App. 3d 208, 574 N.E.2d 822.

In the case at bar, the State argued that the only possible explanation for the location and direction of the defendant's fingerprints was that the defendant removed the screen at Touchstone and stole the tape player. During his closing arguments, the prosecutor told the jury as follows:

> "[T]here is no physical reason for his [defendant's] fingerprints to be on that window sash and on that screen because there is no physical human way that he could have contorted himself to be inside that room and to touch that window sash in such a manner that his fingerprints appeared the way Officer Jatkowski told you they were."

The defendant objected to the State's characterization of the evidence. The defendant argued that there was no evidence presented that the prints could *only* have been made at the time of the burglary. The court overruled the objection. The court ruled that the prosecutor's statements were a matter of argument and that the jury would have to resolve the issue for itself. The defendant asserts that there was no showing that the fingerprints could only have been made at the time of the offense.

The evidence shows that the defendant attended meetings in the basement room along with numerous other persons. It is undisputed that the window was difficult to open and shut and that the window was often opened to clear the room of cigarette smoke. Therefore, the defendant argues that it is entirely possible that the members in the defendant's therapy group found it necessary to have someone outside to help get the window open or shut and the defendant volunteered to do so. Or, it is possible that the defendant was late for an evening meeting, found the door locked and went to the window to get someone's attention. In short, the defendant argues that there are numerous valid alternative explanations for the presence and location of his fingerprints.

 Although these arguments warrant respectful consideration, this court cannot easily dismiss the fact that the jury had the benefit of hearing Officer Jatkowski's testimony firsthand and viewing his demonstrations as to the location and direction of the prints. This is something we cannot recreate on review. The State argued to the jury that given the location and direction of the prints, the only possible explanation for their presence was that the defendant forcibly removed the screen from Touchstone and stole the tape player. The jury obviously agreed with the State that the fingerprints were found under such circumstances that they could only have been made at the time of the crime. Based on our review of the record, we cannot say that the verdict is unreasonable or improbable. The jury, as the trier of fact, was in the best position to observe the testimony of Officer Jatkowski with regard to the fingerprints, and we decline to interfere with that role where we are unable to find that no rational trier of fact could have found a defendant guilty beyond a reasonable doubt.

The sole remaining issue is whether the prosecutor's comments made during his rebuttal argument constituted reversible error. Counsel, on appeal, claims the prosecutor told the jury it could draw inferences from the evidence not supported by the record. The defendant, however, offered no objection to the prosecutor's comments at trial and did not include these alleged errors in his post-trial motion. The State claims the defendant has, therefore, waived his right to raise these issues on appeal. In the alternative, the State argues the comments were proper and only made in response to arguments forwarded by defense counsel during his closing argument.

It is well established that both a trial objection and a written post-trial motion specifically articulating the issues sought to be raised on appeal are required in order to preserve the matters for review. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) As our supreme court noted in *People v. Caballero* (1984), 102 Ill. 2d 23, there are numerous reasons for this rule:

> "Failure to raise issues in the trial court denies the trial court the opportunity to grant a new trial, if warranted. This casts a needless burden of preparing and processing appeals upon appellate counsel for the defense, the prosecution, and upon the court of review. Without a post-trial motion limiting the consideration to errors considered significant, the appeal is open-ended. Appellate counsel may comb the record for every semblance of error and raise issues on appeal whether or not trial counsel considered them of any importance." 102 Ill. 2d at 31-32.

■ In the case at bar, a review of the entire record reveals that complained-of statements were made in response to arguments forwarded by counsel for the defense. This is the most likely explanation for the lack of an objection. During his closing argument, defense counsel referred to the fact the prints were of a high contrast and suggested that this "high contrast" was consistent with someone adjusting the window and that the burglar probably used gloves or kleenex to mask his prints.

> "[W]hen he (Officer Jatkowski) arrives there, he finds some fingerprint evidence, and he finds that it is of a high contrast. In other words, he finds the fingerprint evidence of Mr. Beathea that is so very obvious, that is so very clear, that it is more in tune with somebody finagling with the window rather than burglarizing the place * * *."

Having commented on the "high contrast" of the prints and offering an explanation for their presence, the prosecution was entitled to offer to the jury its own theory on the meaning of the prints' "high contrast." Normally, the defendant cannot complain of comments made by a prosecutor when the defense has opened the door and invited a comment on certain matters. (*People v. Miller* (1983), 115 Ill. App. 3d 592, 450 N.E.2d 767.) Defense counsel in the case at bar, in all likelihood, did not object because he realized that the prosecutor's comments were made in response to his own. Perhaps defense counsel failed to object for reasons related to trial strategy. Whatever the reasons for counsel's failure to object, we cannot consider the matter plain error and deem any objection the defendant may have possessed waived.

For the aforesaid reasons, the judgment of the circuit court of Peoria County is hereby affirmed.

Affirmed.

BARRY, P.J., and SLATER, J., concur.