THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
EUGENE MARTIN, Defendant-Appellant.

First District (2nd Division)    No. 1—93—0187

Opinion filed March 28, 1995.

Rita A. Fry, Public Defender, of Chicago (Lisa S. Ottenfeld, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Kathleen Bom, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

Defendant, Eugene Martin, was convicted by a jury of the murder of Byron Jones (Jones) under an accountability theory and was sentenced to a term of 25 years in the custody of the Department of Corrections.

Defendant now appeals claiming that: he was not proved guilty beyond a reasonable doubt; the *voir dire* at his trial was inadequately conducted; gang evidence was improperly admitted; the State improperly questioned him regarding the veracity of other witnesses; the prosecution misstated evidence in closing argument; and failure to instruct the jury properly amounted to either reversible error or ineffective assistance of counsel.

At trial Enona Mason (Mason) testified that on the afternoon of April 28, 1991, she purchased cocaine from defendant and Tyrice Hubbard (Hubbard). Later that afternoon, Mason looked out of her window and noticed a gathering of people on the street. The police had pulled over a "burnt orange"-colored car, a photo of which Mason identified at trial, and they were talking to defendant and Hubbard. After speaking with the officers, defendant and Hubbard "stayed out and [talked] with some girls across the street."

Still later that afternoon when, again through her window, Mason saw defendant and Hubbard arguing with Jones amidst a gathering of 50 or 60 neighbors, she left her apartment to help dif-

fuse the situation. According to her, the argument was about "the girls and them[1] being in that neighborhood." It was then that someone, either defendant or Hubbard, pulled out a semi-automatic pistol and held it in his hand. At trial, Mason identified a semi-automatic pistol as the one she saw that afternoon and testified that Jones told the holder of the gun, "If you're going to pull the gun you'd better use it." However, after the gun was displayed, the crowd backed off and defendant and Hubbard drove away.

Around midnight of that same day, Jones whistled up to Mason's apartment and asked her if she wanted some drugs. When she told him that she did not, he walked across the street into the building of one of his girlfriends. Soon thereafter, Mason heard several shots fired in the street. Upon looking out her window, she saw two people in the same "burnt orange"-colored car she had seen earlier that afternoon; she stated, however, that she could not identify either of the two people in the car.

Mason also testified that she bought drugs from defendant and Hubbard on the day of the shooting. Cross-examination revealed that she was convicted in 1993 of theft and in 1991 of possession of a controlled substance. She admitted that she recognized Jones as a "dope dealer" and that she had purchased cocaine from him when she was a cocaine addict.

The day after the shooting, Mason was a passenger in a car that was pulled over by police. The police found "paraphernalia" and took her to the station. It was then that she gave her first statement to Detective Peter Satriano (Satriano) regarding the shooting. At that time she failed to inform the detective that defendant and Hubbard had sold her drugs on the day of the shooting.

Larry Yates (Yates) testified that he had been convicted of possession of a controlled substance as well as for the unlawful use of weapons. He also stated that he and Jones were members of the Blackstone gang, which controlled drug sales in the area surrounding the shooting.

At trial, Yates identified the defendant and the same photo of the car that Mason had testified to. He also testified that on the afternoon before the shooting he witnessed Jones arguing with defendant and Hubbard near that car. According to Yates, the three were arguing about drug sales. Walking up to the scene, he heard Jones say: "You can't sell out here." Defendant responded: "I can sell wherever I want to." Defendant then withdrew a gun from under the car seat, clicked it back, pointed it at Jones and kept repeating he could sell

---

[1] "[T]hem" seems to refer to defendant and Hubbard.

drugs wherever he wanted. Yates testified that Jones responded: "If you pull the gun out, you'd better use it." Yates then heard Hubbard say: "Naw, it's too many people out here. Let's go." Thereafter, defendant and Hubbard got in the car and drove away.

Yates also testified that, in 1991 at a Blackstone party, defendant greeted him with a Blackstone gang sign, signifying that he was a fellow Blackstone. Thereafter, however, he heard that defendant had left the Blackstones. Cross-examination revealed that at Hubbard's trial, Yates testified that he had never seen defendant before the day of the shooting. Yates explained that at the time of Hubbard's trial he did not know defendant by his real name but only by his nickname: "Newkie."

Officer Michael Horn (Horn) testified, consistent with Mason's testimony, that on April 28, 1991, just after 4 p.m., he pulled over a car because there was no evident registration, spoke with both Hubbard (the driver) and defendant (the passenger), and recorded the information according to standard procedure. He did not issue a citation because there was a temporary registration tag in the back window. At trial, he also identified a photo of the car and testified that he spoke with Detective Satriano regarding the traffic stop.

Detective Satriano testified that he was assigned to investigate Jones' death and spoke with both Yates and Mason. Mason told him that a car pulled over by the police about eight or nine hours before the incident was involved in the shooting. Detective Satriano pulled the police log for that day and reviewed the information contained in Officer Horn's report. He next proceeded to Gang Crimes South, a police division specializing exclusively in gang activity, and spoke with Officer David Snethen (Snethen). Together, they then proceeded to apartment 908 on 3519 South Federal, the address recorded in Officer Horn's report, and arrested defendant and Hubbard. At that time, defendant told Satriano that he was a Blackstone.

Officer Snethen testified that a gang known as the Gangster Disciples controlled the building in which defendant and Hubbard were arrested. Furthermore, when asked whether the Gangster Disciples and the Blackstones were either allies or rivals, Snethen responded: "They wouldn't be too friendly to each other, no sir."

The identical photo of a car identified by Mason and Yates and which matched Officer Horn's description in his police report was identified at trial by Satriano as having been the one that was located outside the building at 3519 South Federal. A later search of that car uncovered a Cobra 9-mm semi-automatic pistol, which was also identified at trial by both Mason and Yates. Furthermore, shell casings and projectiles retrieved at the scene of Jones' murder were determined to have been fired from that same pistol.

After his arrest, defendant was interviewed by Assistant State's Attorney Colleen McSweeney Moore and made a voluntary written statement consisting of the following information: Defendant and Hubbard drove a maroon car with gold rims owned by Hubbard and were on their way to Mason's apartment to collect some money she owed Hubbard when they were stopped by police. Thereafter, they encountered another woman on the street who informed them that: "[Jones] said [you] better not come to [this area] anymore to sell drugs because he sells drugs [here]." Soon, there was yelling and screaming, and a crowd, including friends of Jones who were Blackstone members, gathered around them. Defendant "got the Tech-9 out of the car and showed it the [the crowd] and they backed away." Defendant and Hubbard then left.

Next, they went to defendant's mother's house, then to get something to eat, and subsequently met four other men: Chili, Big "D," Junior, and Antoine. After discussing the earlier incident, they decided to return to that area and "see what was going on." They drove in two cars: defendant went in a car with Big "D," Junior, and Antoine; Hubbard drove his car, and Chili was his passenger. Defendant's car first drove through the area of the shooting while Hubbard and Chili waited at a gas station. After the occupants in defendant's car had failed to see anyone, they returned to the gas station.

Both cars then proceeded to the scene of the shooting, approaching it from different ends of the street. Jones walked out of a building, began walking toward defendant's car and said "you came back." Jones then ran down the sidewalk, and defendant's car drove alongside him. Defendant then heard a shot. He thought Chili had fired his .38 pistol. Then he heard the "Tech-9" shoot nine times. Later, Hubbard told defendant that he had fired the automatic pistol at Jones but did not believe he had hit him, placed the pistol back in the trunk of his car, and returned to 3519 Federal.

Defendant's testimony at trial tracked his written statement. He also testified that he was never a member of a gang, and that on the night of the shooting, Jones looked as though he was reaching into his waistband. Further, he stated that Hubbard, who was only 16 at the time, was his brother-in-law, and that he accompanied Hubbard back to the scene of the crime because he wanted to insure his safety.

First, defendant contends that a reasonable jury could not have found him guilty beyond a reasonable doubt because the State failed to present sufficient proof that he had the requisite intent to promote or facilitate the commission of a criminal act when no one but defendant testified as to why he returned to the scene of the crime.

In reviewing the sufficiency of the evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis omitted.) (*People v. Young* (1989), 128 Ill. 2d 1, 49, 538 N.E.2d 453, 472, quoting *Jackson v. Virginia* (1979), 443 U.S. 307, 318-19, 61 L. Ed. 2d 560, 573-74, 99 S. Ct. 2781, 2788-89.) The fact finders' role as the weigher of the evidence is preserved through a legal conclusion that upon judicial review, all the evidence is to be considered in a light most favorable to the prosecution. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277.) Minor discrepancies in the testimony of witnesses go to the issue of credibility, which must be judged by the trier of fact. (*People v. Thomas* (1981), 96 Ill. App. 3d 443, 450, 421 N.E.2d 357, 362.) A reviewing court may not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence. *People v. Geneva* (1990), 196 Ill. App. 3d 1017, 1026, 554 N.E.2d 556, 562.

To convict a person of an offense based on a theory of accountability (720 ILCS 5/5—2(c) (West 1992)), the State must prove beyond a reasonable doubt that (1) the defendant solicited, aided, abetted, agreed or attempted to aid another person in the commission of the offense, (2) the participation took place either before or during the commission of the offense, and (3) the defendant had a concurrent, specific intent to promote or facilitate the commission of the offense. *People v. Morales* (1993), 251 Ill. App. 3d 1001, 1011, 623 N.E.2d 864, 871; 720 ILCS 5/5—2(c) (West 1992).

Additionally, the "common design rule" provides that where two or more people engage in a common criminal design, any acts in furtherance thereof committed by one party are considered to be the acts of all parties to the common design and all are accountable for those acts. (*People v. Deason* (1991), 223 Ill. App. 3d 320, 328, 584 N.E.2d 829, 834.) Factors considered in determining the defendant's legal accountability include the defendant's presence during the commission of the crime without opposition or disapproving it, the defendant's failure to report the crime, and the defendant's continued association with the perpetrator or perpetrators after the criminal act. *Morales*, 251 Ill. App. 3d at 1012, 623 N.E.2d at 871-72.

Defendant argues that circumstantial evidence presented at trial failed to establish a plan to kill Jones, or any other criminal scheme, and was inconsistent with a reasonable hypothesis of his innocence. (*People v. Beathea* (1992), 229 Ill. App. 3d 1010, 1012, 594 N.E.2d 386, 389.) Specifically, defendant contends that because his testimony was the only occurrence evidence presented at trial, and because he stated

that they went back only to collect the money Hubbard was due from Mason, the jury was provided with a reasonable explanation of his involvement that should not have been rejected. We disagree.

Defendant analogizes his case to *People v. Taylor* (1993), 244 Ill. App. 3d 152, 614 N.E.2d 79, *appeal allowed* (1993), 152 Ill. 2d 577, 622 N.E.2d 1224, but since he filed his brief, *Taylor* has been reversed by our supreme court, which, we note, supports our decision here. *People v. Taylor* (1995), 164 Ill. 2d 131, 140-41.

According to defendant's own statement, on the afternoon before the shooting, and after he and Hubbard were informed that Jones claimed that they were not to sell drugs in what he regarded as his territory, defendant pulled out a semi-automatic pistol and brandished it before a crowd that had gathered around them. Later that day, after defendant, Big "D," Junior, and Antoine checked and found that no one was around, defendant and Hubbard returned to the same area in two separate cars.[2] All five men were aware of the prior argument, two of whom defendant knew to be armed. The two cars approached from separate directions, and when Jones began running away from defendant's car, the car kept abreast of him; shots were fired, and defendant fled the scene. The jury surely must have found defendant's and Hubbard's employment of these tactics in attempting to collect Mason's debt to Hubbard rather quaint—and at midnight to boot!

Furthermore, defendant did not notify the police about the incident, nor did he even try to disassociate himself from the shooter. He was later arrested with Hubbard, and shells found at the scene of the shooting were discovered to have been fired from the automatic pistol found in the trunk of Hubbard's car.

Under an accountability theory, evidence of events surrounding and following the commission of a crime is sufficient to show participation in the crime itself. (*People v. Coleman* (1991), 223 Ill. App. 3d 975, 992, 586 N.E.2d 270, 281, citing *People v. Ruiz* (1982), 94 Ill. 2d 254, 257, 447 N.E.2d 148, 152, and *People v. Morgan* (1977), 67 Ill. 2d 1, 9, 364 N.E.2d 56, 60.) Moreover, the jury is not compelled to believe defendant's version of the events surrounding the homicide even if uncontradicted. *People v. Schaefer* (1980), 87 Ill. App. 3d 192, 194, 409 N.E.2d 129, 131; *People v. Bell* (1977), 49 Ill. App. 3d 140, 143, 363 N.E.2d 1202, 1205.

---

[2]When asked during cross-examination why he accompanied Hubbard back to the scene, defendant responded: "I did not want anything to happen to him ***. He left my house with me ***. I wanted to take him back alive."

■ In any event, defendant's account was not the only version the jury heard and, in a case in which the facts could lead to two or more reasonable inferences, a reviewing court will not upset the judgment of the jury unless the inference accepted by the jury is inherently impossible. *People v. Althide* (1979), 71 Ill. App. 3d 963, 967, 389 N.E.2d 240, 243.

Mason testified that on the day of the shooting defendant and Hubbard sold her drugs and that both argued with Jones about "them being in that neighborhood." She also testified that during the argument either defendant or Hubbard pulled out the semi-automatic pistol identified at trial and displayed it to the crowd. Finally, Mason testified that the same car in which she saw defendant earlier that afternoon was involved in the shooting.

Yates testified that on the day of the shooting defendant and Hubbard were arguing with Jones about drug sales, that defendant clicked the semi-automatic pistol back, pointed it at Jones and kept repeating he could sell drugs wherever he wanted, and that Jones responded by telling defendant that if he was going to pull a gun out, he had better use it. Finally, Yates testified that Hubbard apparently told defendant there were too many people around and that they should leave. Consequently, we have no difficulty in concluding that the jury was justified in finding defendant to be guilty beyond a reasonable doubt.

Defendant next argues that the trial judge abused his discretion on *voir dire* in not questioning juror Ramah Christian (Christian) further because he (1) equivocated in some of his answers, (2) indicated that he was inclined to give more weight to a police officer's testimony, and (3) failed to respond directly to a question. Defendant bases his argument on the following interchange between the trial judge and Christian:

"Q. Is there anything about this type of case that would prevent you from being fair and impartial?
A. I don't think so."

The court then told Christian he needed to be certain and had to be fair. He responded: "Like I said, I don't think so. I haven't heard any testimony yet." The court then asked him if he could be fair and impartial and keep an open mind. Christian unequivocally responded that he could.

Further, the trial judge was given Christian's assurance that he understood and would abide by four essential juror qualifications: that defendant was presumed innocent; that he was not required to offer any evidence on his own behalf; that he must be proven guilty beyond a reasonable doubt; and that his failure to testify in his own behalf could not be held against him. (*People v. Zehr* (1984), 103 Ill.

2d 472, 477, 469 N.E.2d 1062, 1064.) Subsequently, Christian indicated that he would give more weight to the testimony of a police officer "[b]ecause he is a police officer."

■ Defendant failed to raise this issue during his trial and in his post-trial motion; consequently, he has waived consideration of it on review. (*People v. Enoch* (1988), 122 Ill. 2d 176, 185-92, 522 N.E.2d 1124, 1129-32.) Notwithstanding waiver, a defendant has a constitutional right to a fair trial and an impartial jury. *People v. Johnson* (1991), 215 Ill. App. 3d 713, 723, 575 N.E.2d 1247, 1253.

However, a prospective juror is not excusable unless his views prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and the oath he takes. Furthermore, remarks of a prospective juror are to be considered as a whole, and he need not express himself with "meticulous preciseness." (*People v. Pitsonbarger* (1990), 142 Ill. 2d 353, 385-86, 568 N.E.2d 783, 796.) Finally, impartiality is not a technical concept, but a state of mind, or a mental attitude, and the challenging party bears the burden of showing that a potential juror has a disqualifying state of mind. (*People v. Cole* (1973), 54 Ill. 2d 401, 413, 298 N.E.2d 705, 712.) We hold, therefore, that the trial court's determination to permit Christian to serve on the jury was not an abuse of discretion. *People v. Tipton* (1991), 222 Ill. App. 3d 657, 664, 584 N.E.2d 310, 314, citing *People v. Pecina* (1985), 132 Ill. App. 3d 948, 477 N.E.2d 811.

Based on the same interchange between the trial judge and Christian, defendant alternatively argues that his defense counsel was ineffective because he failed to (1) ask the court to question Christian further, (2) challenge Christian for cause or (3) exercise a peremptory challenge.

However, to prove ineffective assistance of counsel defendant must demonstrate that counsel's representation fell outside "the range of competence demanded of attorneys in criminal cases" (*Strickland v. Washington* (1984), 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064) and that " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " (*People v. Albanese* (1984), 104 Ill. 2d 504, 525, 473 N.E.2d 1246, 1255-56, quoting *Strickland v. Washington* (1984), 466 U.S. 668, 694, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2068.) This burden is heavier to bear than showing that the trial court abused its discretion.

Additionally, a court may dispose of such a claim due to lack of sufficient prejudice alone. (*Albanese*, 104 Ill. 2d at 527, 473 N.E.2d at 1255-56.) Furthermore, the decision whether or not to use a peremptory challenge is often a strategic one. (*People v. Asteri* (1990), 196 Ill.

App. 3d 885, 890, 554 N.E.2d 1059, 1063.) Defendant fails to demonstrate that the outcome of his case would have been different but for the inclusion of Christian as a member of the jury, or that defense counsel's decision not to use a peremptory challenge was not tactical.

Defendant also contends that evidence regarding his possible membership in a rival gang—Satriano's and Snethen's testimony that the building in which defendant and Hubbard lived and were arrested was controlled by Gangster Disciples—was improperly admitted.

Evidence regarding a defendant's gang membership or gang-related activity is admissible to prove a common purpose or design, or to provide a motive for an otherwise inexplicable act. However, such evidence is admissible only if the membership or activity is sufficiently related to the crime charged. (*People v. Smith* (1990), 141 Ill. 2d 40, 57-58, 565 N.E.2d 900, 907; *People v. Knox* (1993), 241 Ill. App. 3d 205, 211, 608 N.E.2d 659, 662.) While entirely proper for the State to prove a motive, it may not do so in the abstract. Otherwise, through the guise of motive evidence, the jury may be exposed to highly inflammatory evidence which has very little, if any, probative value. *Smith*, 141 Ill. 2d at 58, 565 N.E.2d at 907.

Assuming, without deciding, that the evidence regarding defendant's membership in a rival gang was inadmissible, we conclude it to be harmless error. While there is widespread prejudice against street gangs, the erroneous admission at trial of gang evidence does not automatically warrant reversal. A reviewing court may hold such an error to be harmless when it is satisfied that the error did not contribute to the defendant's conviction. *People v. Easley* (1992), 148 Ill. 2d 281, 330, 592 N.E.2d 1036, 1058.

Defendant admitted that the initial confrontation with Jones involved drugs and Jones' claim that defendant was encroaching on Jones' drug territory. Yates corroborated defendant's admission, and Mason testified that Jones was a "dope dealer" from whom she had purchased drugs in the past. She also stated that she had purchased drugs from both defendant and Hubbard on the day of the shooting.

■ Rivalry between drug dealers over their respective drug territory, whether or not related to gang rivalry, establishes enough of a motive to explain defendant's involvement in the events surrounding the murder, indeed, a more damning one than mere gang rivalry. Consequently, we are not persuaded by defendant's argument.

Next, defendant contends that he was denied a fair trial, because the State asked him to comment on the veracity of other witnesses, and that the prosecutor misstated evidence during closing argument. Defendant failed to raise these errors in his motion for a new trial

and therefore waived them on appeal. *Enoch,* 122 Ill. 2d at 185-92, 522 N.E.2d at 1129-32.

Notwithstanding waiver, it is improper to ask a criminal defendant to opine regarding the truthfulness of other witnesses because such questions invade the jury's function of determining for itself the credibility of witnesses. However, while such questioning is improper, the prejudice resulting therefrom must be substantial to mandate reversal. *People v. Robinson* (1991), 219 Ill. App. 3d 235, 239-40, 579 N.E.2d 579, 582; *People v. Mitchell* (1990), 200 Ill. App. 3d 969, 978, 558 N.E.2d 559, 565.

■ We find that the State asked defendant three improper but harmless questions. On two occasions the State asked him if Mason had lied when she testified that defendant sold her drugs. The State also asked defendant if Detective Satriano had lied in testifying that defendant admitted that he was a former member of the Blackstones. In each instance defendant indicated that the witness had lied. Defendant cites *People v. Weinstein* (1966), 35 Ill. 2d 467, 220 N.E.2d 432, for support, but there the State's conduct was more egregious than in defendant's case.

In *Weinstein,* the prosecutor repeatedly misstated that the burden of proof was on the defendant, and the trial court repeatedly sustained the defense counsel's objections. (*Weinstein,* 35 Ill. 2d at 470-71, 220 N.E.2d at 433-34.) Here, the defendant failed to object to the first question regarding veracity, and after his objection to the second question was sustained, the State asked only one additional veracity-type question.

Defendant further claims that ineffective assistance of counsel compounded the prejudicial effect of the improper questioning because defense counsel neglected to request that the jury be instructed to consider Mason's drug addiction when weighing her credibility. Defendant maintains Mason's credibility was crucial to the outcome of the case.

■ This claim is without merit. An ineffectiveness claim, as outlined above, is an exceedingly high hurdle to overcome. Moreover, in *People v. Jackson* (1990), 195 Ill. App. 3d 104, 551 N.E.2d 1025, the defense counsel's decision not to request an instruction regarding the veracity of a witness who was a drug addict was held to be tactical in nature and not ineffectiveness of counsel. *Jackson,* 195 Ill. App. 3d at 119, 551 N.E.2d at 1033-34.

Defendant also contends that he was denied a fair trial because the prosecutor improperly stated in his closing argument that Mason owed defendant money, and theorized that this explained why defendant and Hubbard were at the scene together.

■ A prosecutor has great latitude in making closing arguments and in drawing reasonable inferences from the evidence. (*People v. Gil* (1992), 240 Ill. App. 3d 151, 163, 608 N.E.2d 197, 206; *People v. Wallace* (1981), 100 Ill. App. 3d 424, 432, 426 N.E.2d 1017, 1024.) In the instant case, Mason testified that she had purchased drugs from both defendant and Hubbard on the day of the murder, as well as from Hubbard in the past. Furthermore, in his testimony, defendant characterized his involvement in the shooting as that of accompanying Hubbard to collect a debt. Therefore, we conclude that the jury could have reasonably inferred that Mason was in debt to defendant as well as Hubbard. Assuming, arguendo, that the State's remark was improper, in light of the towering evidence of defendant's guilt, the argument incurred him no prejudice.

Although not raised below, defendant further argues that the trial court's failure to instruct the jury regarding the lesser offense of second degree murder and self-defense constituted plain error.

An instruction on either self-defense or second degree murder based on an unreasonable belief is warranted when the defendant presents some evidence of unlawful force used against him, and that he was not the aggressor. In the case of self-defense, he must also show that he reasonably believed that (1) he was in danger of imminent harm, (2) the use of force was necessary to avert danger, and (3) the kind and amount of force used were necessary. *People v. Jerome* (1990), 206 Ill. App. 3d 428, 432, 564 N.E.2d 221, 223-24.

Defendant failed to establish any such evidence. Some eight hours before the shooting, he aimed a semi-automatic pistol in the direction of Jones, who was unarmed. Furthermore, although defendant testified that Jones was reaching in his waistband as if for a gun, he also stated that Jones had turned away from the car that defendant was in and started running down the street, which parallels defendant's statement to the police that his car followed Jones after he had turned around and started running away. Finally, in that same statement, defendant significantly failed to mention that Jones was reaching into his waistband.

■ Accordingly, we find that defendant did not make a proper showing of the elements required to establish either self-defense or second degree murder; he thus was not entitled to have the jury instructed on either. Consequently, defendant's last contention, that his trial counsel's failure to request that the jury be instructed on the lesser offense of second degree murder and self-defense amounted to ineffective assistance of counsel, is unavailing as well. *Albanese*, 104 Ill. 2d at 527, 473 N.E.2d at 1256.

For all of the aforementioned reasons, we affirm the judgment of the trial court.

Affirmed.

DiVITO and McCORMICK, JJ., concur.