FIFTH DIVISION
 November 1, 1996

No. 1-94-4358

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the
 ) Circuit Court of
 Plaintiff-Appellee, ) Cook County
 )
 v. )
 )
THADDEUS JIMENEZ, ) Honorable
 ) Christy Berkos,
 Defendant-Appellant. ) Judge Presiding

 PRESIDING JUSTICE McNULTY delivered the opinion of the court:
 Defendant, Thaddeus Jimenez, appeals from his conviction and
sentence on the charge of first degree murder. We reverse and
remand for a new trial because the trial court refused to ask
prospective jurors any question concerning the effect defendant's
gang affiliation might have on their ability to give him a fair
trial.
 Around 6 p.m. on February 3, 1993, Larry Tueffel and Eric Morro
encountered Victor Romo and another boy on a city sidewalk. Several
witnesses on the street saw the boy with Romo kill Morro by shooting
him point-blank in the chest. One of the witnesses called police
about six hours later and named defendant as the shooter. Based on
the telephone call, police arrested defendant before dawn on
February 4, 1993. Three witnesses viewed a lineup at the police
station. Two identified defendant as the shooter; the third witness
said both defendant and another person in the lineup looked like the
shooter.
 Prior to trial defendant moved to preclude reference to gang
affiliation. The court denied the motion, finding that the
prosecution had sufficient evidence that gang affiliation provided
the motive for the murder. Defendant then sought to have the court
ask each member of the venire, on voir dire:
 "Would the fact that an accused is allegedly a member of
 a street gang, prevent you from giving him a fair and
 impartial trial?"
Defendant also requested two other questions, one relating to
handguns and the other relating to publicity concerning gang-related
murders. The court said, "[W]e are just going to be here for days
going into these things." The court refused all three questions,
and it asked the venire no questions remotely suggesting that gang
evidence would be part of the case.
 At trial Shawn Cosmen testified that around 3:30 p.m. on
February 3, 1993, he and Morro saw defendant yelling towards a
school bus and making hand signs indicating his affiliation with the
Royals gang. Morro told defendant to "take his gang banging stuff
somewhere else" because kids were nearby. Defendant answered:
"You'll get your ass beat. *** You'll get yours."
 Tueffel testified that when he and Morro encountered defendant
and Romo around 6 p.m. that day, Romo accused Morro of owing Leo
some money. Morro said it was none of Romo's business. Romo and
defendant walked a few steps away, then returned. Romo pushed Morro
against a wall. Morro swung his fist, then defendant shot Morro. 
After shooting Morro, defendant threw up the hand sign for the
Royals gang.
 Tueffel admitted that the first time he spoke with police he
said Frankie, not defendant, shot Morro. He also gave a description
that did not fit defendant. Tueffel explained that he was also a
member of the Royals, and he feared retaliation if he identified
defendant.
 The officer who took Tueffel's initial description of the
shooter testified that the description was vague and Tueffel acted
evasively, changing some parts of the description as he spoke. The
prosecutor asked for the officer's opinion "as to the truthfulness"
of Tueffel's initial description of the shooter. The court allowed
the officer to answer, over defendant's objection, that he did not
believe Tueffel had told him the truth about what he saw.
 Defendant's sister, Angela Jimenez, and three friends of his
family testified that they saw defendant at a family party from 4:30
p.m. until 11 p.m. on February 3, 1993.
 Victor Romo testified that he and Carlos Torres met Morro and
Tueffel around 6 p.m. on February 3. Torres argued with Morro about
money. When Morro started to swing at Torres, Romo ran away. Romo
heard the gunshot seconds later. He admitted that he had been found
delinquent due to his role in the murder.
 Defendant sought to present Ezequiel Romo to testify to a
conversation he had with Torres. The trial court disallowed the
evidence as hearsay. Defendant said in an offer of proof that
Ezequiel Romo would testify that he spoke with Torres on February
10, 1993, and Torres admitted that he shot and killed Morro.
 The court also granted the prosecutor's request to bar the
testimony of Joe Paupau. Defense counsel said that Paupau would
testify that he and a leader of the Royals, Taeksu Chi, attended a
party at defendant's home in January 1993. Paupau and Taeksu got
into a fight and Paupau knocked out some of Taeksu's teeth. Defense
counsel suggested that Taeksu wanted to get back at defendant
because the fight occurred in defendant's home. The trial court
found the theory too far-fetched.
 The jury found defendant guilty of first degree murder. After
hearing substantial evidence of prior criminal acts in aggravation,
the trial court sentenced defendant to a term of 50 years in the
Department of Corrections.
 Defendant argues on appeal that the trial court committed
reversible error by refusing to ask prospective jurors whether
defendant's gang affiliation would prevent them from giving
defendant a fair trial. The trial court has discretion to determine
the scope and extent of voir dire. People v. Lobb, 17 Ill. 2d 287,
300, 161 N.E.2d 325 (1959).
 "However, a failure to permit pertinent inquiries to
 enable a party to ascertain whether the minds of the
 jurors are free from bias or prejudice which would
 constitute a basis of challenge for cause, or which would
 enable him to exercise his right of peremptory challenge
 intelligently, may constitute reversible error." Lobb, 17
 Ill. 2d at 300. 
The trial court "must exercise *** discretion so as not to block the
reasonable exploration of germane factors that might expose a basis
for challenge, whether for cause or peremptory." 
People v. Oliver, 265 Ill. App. 3d 543, 548, 637 N.E.2d 1173 (1994). 
"[T]he standard for evaluating a court's exercise of discretion
during voir dire is whether the questions posed and the procedures
employed created a reasonable assurance that prejudice would be
discovered if present." People v. Lanter, 230 Ill. App. 3d 72, 75,
595 N.E.2d 210 (1992).
 In Oliver the trial court asked the venire collectively if any
members had been victims of any of a list of crimes. Oliver, 265
Ill. App. 3d at 549. The court then asked collectively whether the
experiences would prevent the venire members from remaining
impartial. Most jurors did not respond. Defendant objected that he
needed to know which crimes affected each member of the venire, and
he needed to watch individual responses concerning prejudice. This
court held that the "unduly restrictive [questioning] made it
impossible to determine whether defendant received a fair and
impartial jury. *** The conduct of jury selection proceedings in
this case did not ensure that defendant would be afforded his
constitutional right to a trial before an impartial jury." Oliver,
265 Ill. App. 3d at 551.
 The parties cite for us no case in which the court addresses
the issue of whether a defendant who belongs to a gang has a right
to have the venire questioned as to biases against gang members. 
This appears to be a case of first impression in Illinois courts of
appeal. In most Illinois cases, we have found the trial court
permitted questioning of the venire concerning gang evidence. See
People v. Moreno, 238 Ill. App. 3d 626, 637-38, 606 N.E.2d 514
(1992); People v. Gardner, 282 Ill. App. 3d 209, 218, 668 N.E.2d 125
(1996); People v. Bunch, 159 Ill. App. 3d 494, 505, 512 N.E.2d 748
(1987); United States v. McAnderson, 914 F.2d 934, 943 (7th Cir.
1990). In one case the trial court disallowed the question, but the
defendant did not raise the issue on appeal. People v. Porter, 111
Ill. 2d 386, 401-02, 489 N.E.2d 1329 (1986).
 Gang membership is an area of potential bias, as "there is
widespread prejudice against street gangs." People v. Martin, 271
Ill. App. 3d 346, 355, 648 N.E.2d 992 (1995). The court here
refused to ask the venire any questions that could probe for this
bias. Because of the complete lack of questioning on this issue
defendant could not exercise his peremptory challenges
intelligently. See Lobb, 17 Ill. 2d at 300. The procedures
employed here would not reveal prejudice against gang members. See
Lanter, 230 Ill. App. 3d at 75. Indeed, the trial court effectively
conceded that its procedure would allow onto the jury persons
predisposed to find defendant guilty solely because he was a gang
member, as the court refused to ask about bias against gangs in part
because, with that question, the court would spend much more time
impanelling an impartial jury.
 We hold that even a gang member has a constitutional right to
have his case determined on the basis of the evidence of his guilt
or innocence, by a jury that is not predisposed to find him guilty
solely because of his gang membership. Ill. Const. 1970, art. I,
8. Once the court decided to permit the prosecution to present
evidence of defendant's gang affiliation, by denying defendant's
motion in limine, "the trial judge was under a clear duty to insure
during voir dire that the jury selected [was] free from prejudice
against the group." People v. Beyea, 38 Cal. App. 3d 176, 195, 113
Cal. Rptr. 254, 266 (1974). Defendant need not prove that the jury
impanelled actually harbored prejudice against him. Lanter, 230
Ill. App. 3d at 75. Because of the improper refusal of an
appropriate question, which would have tested an area of potential
bias not covered by other questions, the conviction must be
reversed. Lanter, 230 Ill. App. 3d at 76.
 The identification of defendant as the shooter by eyewitnesses
sufficiently sustains a verdict finding him guilty beyond a
reasonable doubt. People v. Slim, 127 Ill. 2d 302, 307-08, 537
N.E.2d 317 (1989). The trier of fact must weigh the credibility of
alibi testimony against the credibility of identification testimony. 
Slim, 127 Ill. 2d at 315. Therefore, we remand the cause for a new
trial. See People v. Massie, 137 Ill. App. 3d 723, 732, 484 N.E.2d
1213 (1985).
 Three further issues will probably arise again on retrial. 
Defendant argues that the officer who took Tueffel's initial
description of the offender should not have been permitted to
testify that he believed Tueffel lied when he gave the description. 
In People v. Sparkman, 68 Ill. App. 3d 865, 870, 386 N.E.2d 346
(1979), an officer who took a witness' statement testified that he
did not report the statement because the witness' conflicting
stories made her statement unbelievable. The appellate court held
that the officer improperly expressed his opinion on credibility,
but because the opinion was obvious, it did not prejudice the
defendant. Sparkman, 68 Ill. App. 3d at 871. Following Sparkman,
we hold that the officer here cannot properly express an opinion
concerning the credibility of Tueffel's initial description of the
offender. On retrial the court should bar the prosecution's
question and the officer's opinion.
 Defendant now, on appeal, claims that Joe Paupau would have
testified that defendant knocked out gang leader Taeksu's teeth and,
in retaliation, Taeksu ordered Tueffel to falsely implicate
defendant. The record shows that at trial defendant relied on the
very different representation that Paupau would testify that Paupau,
not defendant, knocked out Taeksu's teeth, and Taeksu sought revenge
against defendant only because the fight occurred at a party in
defendant's home. On retrial the court will need to assess the
relevance and materiality of the testimony Paupau will actually
present, once defendant determines what that testimony will be.
 Finally, defendant seeks to present Ezequiel Romo's testimony
concerning Torres' confession that he, not defendant, shot Morro. 
Defendant argues first that, as a matter of fundamental fairness,
the court should permit him to present another person's confession
in support of defendant's theory of the case in at least all
circumstances in which it would permit the prosecution to present
defendant's confession in support of the prosecution's theory of the
case. See People v. Gonzalez, 104 Ill. 2d 332, 338, 472 N.E.2d 417
(1984). Our supreme court has established standards for determining
the admissibility of alleged confessions a defendant seeks to
introduce, and those standards do not coincide with standards for
admissibility of the defendant's confessions. See People v. Byrd,
21 Ill. 2d 114, 116, 171 N.E.2d 782 (1961); People v. Hawkins, 53
Ill. 2d 181, 185, 290 N.E.2d 231 (1972); People v. Bowel, 111 Ill.
2d 58, 66-67, 488 N.E.2d 995 (1986). We find that the argument from
fundamental fairness, which would require some change in those
standards, must be decided by our supreme court.
 A declarant's confession that he, not defendant, committed the
crime is admissible as a statement against penal interest if
circumstances give the statement sufficient indicia of
trustworthiness. Bowel, 111 Ill. 2d at 66. Some factors the court
may consider include corroborative evidence, the extent of self-
incrimination, the spontaneity of the confession and whether the
person who heard the confession was such a close acquaintance that
the declarant might reasonably be expected to confess to him. 
Bowel, 111 Ill. 2d at 67. These factors are only some possible
considerations that may provide guidance in determining
trustworthiness of a confession. Bowel, 111 Ill. 2d at 68. Even
when these factors show some trustworthiness, the confession may be
inadmissible if the confessor is not available for cross-examination
either at trial or in prior hearings. Bowel, 111 Ill. 2d at 68;
People v. Hampton, 249 Ill. App. 3d 329, 337, 618 N.E.2d 923 (1993). 
The defendant is responsible for making the alleged declarant
available for cross-examination. People v. Murray, 201 Ill. App. 3d
573, 579, 559 N.E.2d 174 (1990).
 Victor Romo's testimony that Torres shot Morro provides the
most substantial corroboration for the confession. The record shows
that defendant subpoenaed Torres, but whether he appeared so that he
could be cross-examined is less clear. However, defendant's offer
of proof provided no details of the confession, except that Torres
admitted the shooting. This confession may not incriminate Torres,
if he also reported details that make the shooting constitute self-
defense. The lack of detail concerning, for example, Torres'
appearance, makes impossible the determination of the extent to
which the alleged confession corroborates the testimony of the other
eyewitnesses. Defendant in the offer of proof also gave no
indication of the nature of the relationship between Torres and
Ezequiel Romo, and Romo's unspecified questions may deprive the
confession of spontaneity. See Hampton, 249 Ill. App. 3d at 337. 
We find the offer of proof inadequate for a determination of the
trustworthiness of the confession. On remand, defendant may present
in full the circumstances surrounding Torres' statements for an
evaluation of their trustworthiness.
 Because the trial court refused to ask the venire any question
from which the defendant could determine whether jurors would be
able to weigh impartially the evidence against an admitted gang
member, the judgment of the trial court is reversed and this cause
is remanded for a new trial.
 Reversed amd remanded.
 GORDON and HOURIHANE, JJ., concur.